THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GEORGE E. BURGESS, Appellant.

Crimes — larceny — trial — evidence — obtaining money by false representations upon sale of corporate stock — consent by defendant, upon appearing before grand jury, that testimony given by him might be used against him on criminal trial — auditor's report presented by him to grand jury, and upon which he was there examined, part of his testimony and properly admitted in evidence against him without proof of accuracy — secondary evidence of contents of books upon which report was based competent where books were without State and custodians refused to produce them — rule of confrontation not applicable.

1. The evidence upon trial of an indictment charging defendant with the crime of grand larceny, in that he obtained money by false representations made in connection with a sale of corporate stock, examined and held sufficient to sustain a verdict of conviction.

2. Defendant, having asked leave to appear before the grand jury upon investigation of the affairs of the corporation, signed a consent that the testimony "which I shall give * * * may be used against me in any proceedings, trial examination or case, civil or criminal," and presented for examination by the grand jury a series of documents including a printed report by an auditor purporting to show the financial condition of the corporation and was questioned in regard thereto. Upon this trial, therefore, the auditor's report was properly admitted in evidence without proof of its accuracy.

When the defendant presented it to the grand jury for consideration and was questioned upon it, it became part of his testimony before that body and as such was admissible in evidence when that testimony was read into the record on this trial.

3. Objection to testimony of the contents of the books upon which the auditor's report was based upon the ground that secondary evidence of their contents was not admissible, cannot be sustained where it appears that the books were without the State and that their custodians refused to produce them in court. The general rule that secondary evidence of the contents of a writing, which has been lost or destroyed, is admissible, applies to criminal as well as to civil cases and no distinction in this regard can be drawn between writings which are lost or destroyed and writings which cannot be produced because they are out of the jurisdiction.

4. The rule of confrontation may not be stretched to exclude the testimony of a witness, actually produced in court and subject to cross-examination, who testifies not to what another witness has told him but to what he has seen.

*People* v. *Burgess*, 218 App. Div. 810, affirmed.

(Argued January 20, 1927; decided February 23, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 9, 1926, unanimously affirming a judgment of the Monroe County Court, rendered upon a verdict convicting the defendant of the crime of grand larceny in the first degree.

*T. F. McCue* and *John F. O'Brien* for appellant. The trial court committed prejudicial error in overruling defendant's motion to advise the jury to acquit the defendant, and the trial court committed prejudicial error in denying defendant's motion in arrest of judgment. (*People* v. *Baker,* 96 N. Y. 348; *Hull* v. *Littauer,* 162 N. Y. 569; *Nat. Bank* v. *Weston,* 172 N. Y. 250; *People* v. *Livingston,* 47 App. Div. 283; *Woodbury* v. *State,* 69 Ala. 246; *People* v. *Streicher,* 162 App. Div. 181.) The court committed prejudicial error in overruling defendant's plea of former jeopardy and denying his motion in

arrest of judgment. (*People* v. *Flynn*, 202 N. Y. 138; *State* v. *Allen*, 59 Kans. 758; *Dabbin* v. *State*, 14 Ohio St. 493; *State* v. *Reinhart*, 26 Ore. 466; *Conklin* v. *State*, 25 Neb. 784; *People ex rel. Stabile* v. *Warden*, 202 N. Y. 138; *Cook* v. *State*, 60 Ala. 39; *State* v. *Nilson*, 50 Ind. 487; *State* v. *Sommers*, 60 Minn. 90; *State* v. *Smith*, 44 Kans. 75.) The court committed prejudicial error in overruling the objections to secondary evidence of the contents of corporate books, and in receiving such evidence over the objections of defendant. (*Cohen* v. *International Brokerage Co.*, 124 Misc. Rep. 860; *Bell* v. *Gilbert Paper Co.*, 193 N. Y. Supp. 30; 201 App. Div. 867; *Sample* v. *Platt*, 76 Misc. Rep. 440; *People* v. *Bromwich*, 200 N. Y. 388; *People* v. *Burham*, 119 App. Div. 302; 120 App. Div. 388.)

*William F. Love, District Attorney* (*Frederick S. Holbrook* of counsel), for respondent. The court did not commit prejudicial error in overruling defendant's plea of former jeopardy. (*People* v. *Reagle*, 60 Barb. 527.) Secondary evidence of the contents of the corporate books was competent and the court committed no error in overruling defendant's objections thereto. (*People* v. *Miles*, 183 Fed. Rep. 368.)

LEHMAN, J. The defendant has been convicted of the crime of grand larceny. The indictment sets forth that he obtained $1,000 from one C. Walter Schneeburger by false representations made in connection with the sale to him of capital stock of the Chemical Oil and Gas Company.

At the time of the sale of the stock the defendant was a director, vice-president and general sales manager of the corporation. He sold a large amount of its stock to various persons and derived considerable profit from such sales. Doubtless he expressed himself in enthusiastic manner about the prospects of the corporation. The

charge against the defendant would not be sustained by proof that the defendant was a false prophet. He is charged with obtaining money by false representations as to existing facts — representations which he actually knew were false or which he would have known were false if he had chosen to use sources of information which were easily available, or to make such investigation as any man who desired to speak the truth would have made before he ventured positive assertion, based upon apparent knowledge, as to matters of which he was ignorant. He claims that the evidence does not sustain the charge that he made the alleged representations as to existing facts or that they were false. He urges that a plea of former jeopardy should have been sustained because of the discharge of the jury before agreement upon a previous trial, and that the trial judge committed prejudicial error both in his rulings during the trial and in his charge. We think that it is so clear that the jury was discharged upon the previous trial under circumstances which justified such discharge under the provisions of the Code of Criminal Procedure as construed in *People ex rel. Stabile* v. *Warden, etc.* (202 N. Y. 138, 147) that nothing more need be said on this point.

We find also that the evidence is sufficient to sustain the charge against the defendant. Before he became a salesman of stock he had been engaged in various activities of a religious nature, and others who had been engaged in similar activities were associated with him in his new activity. Their connection with the enterprise may well have induced church members to give particular weight to statements made by the defendant. Perhaps the complaining witness might not have bought the stock upon representations of the defendant if other circumstances had not tended to impress him with the fact that men of substance, recognized as leaders in the work of the church with which he was in some degree affiliated, were connected with the enterprise. That situation does

not negative the testimony of the complaining witness that the defendant made representations as to the existing condition of the corporation and its activities, upon which he relied in investing in its stock. Those representations if made might well lead a prospective investor to believe that the investment would result in profit. Other factors might strengthen the force of the representations so made. The wrong done by the defendant is no less because these factors intervened to produce the contemplated effect which constitutes the crime of larceny by obtaining money through false pretenses. Analysis of the testimony tending to show that the representations were made as charged would serve no purpose. If the jury chose to credit it, it was amply sufficient to counterbalance the assertion of the defendant that he spoke of the future, not the present, and made no statements which were not based on fact or honest opinion and investigation.

While the grand jury was investigating the affairs of the corporation and those connected therewith, the defendant asked and obtained leave of the grand jury to appear before it. He signed a consent that " the testimony which I shall give if I so appear before said grand jury may be used against me in any proceedings, trial, examination or case, civil or criminal." Through the attorney who was then acting as his counsel, he presented for examination by the grand jury a series of documents including a printed report by an auditor which purports to show the financial condition of the corporation. He was questioned before the grand jury, and his answers contain admissions which show *prima facie* that if he made the alleged representations they were in fact false. Some of these admissions are open to the construction that they rest upon the assumption that the printed auditor's report is complete and accurate. The testimony of the defendant given before the grand jury was read at this trial by the People. The defendant there-

after took the stand and sought to explain these admissions. He did not then concede the accuracy of the auditor's report upon which, he says, such admissions were based. The jury apparently gave weight to the admissions before the grand jury. They might do so if the evidence laid before them on this issue was competent.

The trial judge admitted in evidence without proof of its accuracy the auditor's report which the defendant through his attorney had submitted to the grand jury. This report shows on its face that at the very time when, it is charged, the defendant represented that the stock of the oil company was an "investment" and not a "speculation," the company was making no profits and that declarations of dividends for which the defendant voted as director were not justified by any accumulated surplus from past earnings. When the defendant joined in presenting it to the grand jury for consideration and was questioned upon it, it became part of his testimony before the grand jury and as such was admissible in evidence when that testimony was read into the record upon this trial though at the trial the defendant was represented by a different attorney who objected to its admission. Moreover, even though the defendant testified before the grand jury that " I always felt that this statement, this auditor's report, is unfair because it doesn't take into consideration the value of the property any more than just the equipment," he apparently assumed that otherwise the figures contained in it were correct. Indeed, there would have been no reason to present this report to the grand jury, except upon that assumption. To that extent the defendant vouched for its reliability. There was, therefore, no error in its admission in evidence upon this trial as part of defendant's testimony given before the grand jury.

The books of accounts upon which this report was based were not produced in court. An auditor who made up the report was permitted to testify to their

contents. Another witness was permitted to testify to the contents of the corporate books and records. Objection was made on the ground that secondary evidence of the contents of these books was not admissible. The defendant urges that upon a criminal trial such secondary evidence is inadmissible and that in any event sufficient foundation was not laid for its introduction in this case.

Original books of account are ordinarily admissible to prove transactions recorded therein only if supplemented by testimony which verifies the entries. The nature of such testimony need not be set forth here, for in this case there is clearly no testimony which would comply with the rule. Some of the books as to the contents of which oral testimony was admitted were the corporate stock books and the minutes of directors' meetings. They show that the complaining witness was a stockholder of the corporation, and they show the transactions of the corporation by its board of directors. The books of a corporation are admissible for such purpose without proof of the correctness of the entries by the party actually making them. (*Sigua Iron Co.* v. *Brown,* 171 N. Y. 488.) . Secondary evidence of the contents of the books of account was admitted for the purpose of explaining the auditor's report which was based upon them and which was properly admitted in evidence, because the defendant had to some extent adopted that report when he submitted it to the grand jury. Even if the reliability of the entries is not established the fact that the books contain these entries may have independent relevancy. Other evidence shows beyond dispute that at the time when the defendant took part in the declaration of dividends and is claimed to have made the alleged misrepresentations as to the value of the stock, the corporation was in fact making no profit. Entries made in the books to which defendant had at all times access might tend to show that the defendant recklessly and willfully closed his eyes to sources of information which the jury

might find he should have consulted in the exercise of ordinary good faith. Argument might be made that under these circumstances the original books would have been admissible in this case without verification of the entries even if objection had been made on this ground. We are not called upon to pass upon this point. Apparently both sides assumed that the original books would have been admissible as primary evidence. The objection was solely to the admission of secondary evidence of their contents.

The People showed that before the trial a subpœna *duces tecum* was served in Pennsylvania upon the president and the treasurer of the corporation who refused to produce the books in court but gave the People's representatives access to them. There can be no doubt that these officers were in control of the corporation and that the books of the corporation were in their custody. The subpœna *duces tecum* had of course no force beyond the boundaries of the State of New York. Service of it upon the officers of the corporation merely paved the way for refusal by the officers of the corporation to produce the books in court. Obedience to the subpœna could not be enforced and refusal to obey its command left the People powerless to compel production of the books here.

Secondary evidence of the contents of a written document may ordinarily be introduced where the original document is in the custody of a person without the jurisdiction of the courts, and its production has been refused and cannot be compelled. " The books being out of the State and beyond the jurisdiction of the court, secondary evidence to prove their contents was admissible." (*Burton* v. *Driggs*, 20 Wall. [U. S.] 125.) Perhaps if the People could compel the production of books or documents by deposition without the State, mere refusal to produce without compulsion would be insufficient. " It has repeatedly been held that the person last known

to have been in possession of the paper must be examined as a witness, to prove its loss, and that even if he is out of the State, his deposition must be procured if practicable, or some good excuse given for not doing so." (*Kearney v. Mayor, etc., of City of N. Y.,* 92 N. Y. 617.) Here no deposition could be taken outside of the State, for the Code of Criminal Procedure does not permit a commission to issue upon the application of the People.

It is said that even if the preliminary proof was sufficient to admit secondary evidence of the contents of the books in civil cases, no such evidence may be received in a criminal case. Section 392 of the Code of Criminal Procedure provides that: " The rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in this Code." No special provision is contained in the Code governing this kind of evidence. The provision of the Civil Rights Law (Cons. Laws, ch. 6, § 12) that " the accused has the right  *  *  *  to be confronted with the witnesses against him " may hardly be held to render secondary evidence of the contents of a document which cannot be produced inadmissible in a criminal case. Such evidence would, of course, not be admissible even in civil cases, unless the original document was admissible. Where verification of entries must be made to render the entries admissible, doubtless the accused is entitled to be confronted with the witnesses needed for such verification. That is not the case here. As we have pointed out, the objection of the defendant applies only to the introduction of secondary evidence of the contents of books which we assume would be admissible if produced in court. The rule of confrontation may hardly be stretched to exclude the testimony of a witness, actually produced in court and subject to cross-examination, who testifies not to what another witness has told him but to what he has seen.

There can be no question that the general rule that secondary evidence of the contents of a writing, which

has been lost or destroyed, is admissible applies to criminal as well as civil cases. (See Underhill on Criminal Evidence, section 94.) A multitude of cases cited in the textbooks attest the general rule. No distinction in this regard can be drawn between writings which are lost or destroyed and writings which cannot be produced because they are out of the jurisdiction. A search, by no means exhaustive, shows that the rule has been applied in criminal cases where documents were outside the jurisdiction in *State* v. *Alpert* (88 Vt. 191); *Myrick* v. *United States* (219 Fed. Rep. 1); *Machen* v. *State* (17 Alabama Appeals, 427); *Ritter* v. *State* (70 Ark. 472); *People* v. *Bond* (291 Ill. 74); *State* v. *Wren* (77 N. H. 361).

A book received in evidence " becomes primary and independent evidence of the facts stated therein though used in what may be termed a hearsay or assertive capacity." (Chamberlayne, Modern Law of Evidence, sec. 3056.) Secondary evidence of the entries in a book may generally be admitted in place of the primary evidence when preliminary proof is made that the primary evidence is not available. (*Burton* v. *Driggs, supra.*) Such secondary evidence does not take the place of testimony of a witness not produced, and, therefore, the rule of confrontation which must be applied in criminal cases cannot result in its exclusion in such cases. It follows that in th s case the objection was properly overruled.

We have examined the other exceptions, but we find no reversible error. The judgment of conviction should, therefore, be affirmed.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS and KELLOGG, JJ., concur.

Judgment affirmed.