[Civ. No. 23012. First Dist., Div. One. Oct. 25, 1965.]

EDWIN G. COOPMAN, Petitioner, v. THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; DIANA S. COOPMAN, Real Party in Interest.

Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Petitioner.

No appearance for Respondent.

Wagstaffe, Daba & Hulse and Carlos R. Hulse for Real Party in Interest.

SIMS, J.—Petitioner, by his petition for writ of prohibition, seeks an order of this court restraining respondent superior court from enforcing an order made and entered July 29, 1965, granting the motion, initiated by notice filed July 19, 1965, of real party in interest, to compel answers and produce things at a deposition. An alternative writ was issued in respect of the second portion of the order, and following return thereto the matter was regularly argued and submitted on the question of issuance of a peremptory writ. (See *Seven-Up Bottling Co.* v. *Superior Court* (1951) 107 Cal.App.2d 75 [236 P.2d 623].)

These proceedings stem from consolidated cross-actions for divorce pending in respondent superior court in which Diana S. Coopman is plaintiff and cross-defendant, and Richard Coopman is defendant and cross-complainant. Plaintiff moved the trial court for an order requiring petitioner to answer certain questions which he refused to answer, and to produce certain books and records which he refused to produce at the taking of his deposition June 25, 1965. The questions purport to explore petitioner's knowledge of matters concerning the stock of Nevada Electronics, Inc., and of the business and financial affairs of defendant. The documents sought,[1] except insofar as they reflect petitioner's, as distinguished from said defendant's, transactions with the company, are those which would be found only among the books and records of Nevada Electronics, Inc., a corporation.

---

[1]These documents are as follows:

"1. All amendments to the Articles of Incorporation of Nevada Electronics, Inc.

"2. The original By-Laws and all amendments to the By-Laws of Nevada Electronics, Inc.

"3. All monthly and yearly financial statements, including balance

The admitted facts reflect that petitioner is, and at all times relevant was, the president of Nevada Electronics, Inc., a Nevada corporation; that he is a resident of the State of California, but he is not in this state for the purpose of transacting business for the corporation; that the corporation has at no time conducted business in the State of California, nor does it have its books or records in this state; and that all of the affairs of that corporation are handled by and under the control of agents and attorneys of the corporation located at Reno, Nevada. Neither petitioner, nor the corporation, is a party to the pending divorce actions.

The lower court granted the motion, and petitioner filed his petition herein. Relief was summarily denied in regard to the questions which the lower court ordered answered. There was no clear showing that they were not designed to produce, or at least to lead to other questions which would produce information concerning "the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts" (Code Civ. Proc., § 2016, subd. (b)) concerning the nature, extent and value of the community property of the parties involved in the divorce action and the ability of the defendant therein to pay alimony. (See Code Civ. Proc., § 2016, subd. (b); and

sheets and profit and loss statements prepared since the incorporation of Nevada Electronics, Inc.

"4. Inventory of all fixtures, machines, equipment, tools and dies and other personal property of Nevada Electronics, Inc.

"5. Copy of any agreement regarding stock of Nevada Electronics, Inc. between corporation and stockholders or between stockholders.

"6. Copy of market survey or report conducted by General Appraisal Company.

"7. Record of moneys or other property received by you from Nevada Electronics, Inc. since the date of incorporation.

"8. Statement of all money or property invested by each stockholder of Nevada Electronics, Inc.

"9. All agreements of any kind regarding the Black Jack Machines produced by Nevada Electronics, Inc. including, but not limited to, partnership or joint venture agreements, lease agreements and lease and buy-back arrangements.

"10. All reports of income from Black Jack Machines reported to the State of Nevada or any of its agencies.

"11. All earning records of all Black Jack Machines.

"12. Stock register or other stock records of Nevada Electronics, Inc. showing amount of stock held by each stockholder of Nevada Electronics, Inc.

"13. A record of income from each leased Black Jack Machine for the months of March, April, May and June of 1965.

"14. A record of monthly operating expenses of Nevada Electronics, Inc. for the months of March, April, May and June of 1965.''

Louisell, Modern Cal. Discovery (1963) p. 47 and pp. 71-75.)

The alternative writ was granted in respect of that portion of the order which provided for the production of documents. It reads as follows:

"The motion to compel answers and produce things at a deposition, . . . is granted on the following conditions:

". . . 2. The items to be produced, as identified on the aforesaid memorandum will be produced *subject to* the conditions enumerated in this court's decision of June 24, 1965, on file in this proceeding." (Italics that of respondent court.) The order referred to was that made in response to a motion commenced by notice filed June 3, 1965, in the lower court by petitioner to quash a subpoena duces tecum issued May 26, 1965, ordering him to produce similar documents at a deposition on June 10, 1965. It provided: "1. If the records sought to be produced under said subpoena, are to be transported from Nevada to California this will be accomplished at the sole expense of the plaintiff and cross-defendant herein, including the transportation costs of a necessary custodian thereof; 2. If said records are to be examined in Reno Nevada, the plaintiff and cross-defendant will pay all costs and expenses with respect to any deposition of Edwin G. Coopman in Reno, Nevada, including the costs of necessary transportation of said Edwin G. Coopman, and his Counsel (if he chooses to have one accompany him) from San Francisco, California, to Reno, Nevada, and return."

To complete the record it should be noted that following the order of June 24, 1965, a second subpoena duces tecum issued on June 25, 1965, directing the production of similar documents at the trial of the action on July 6, 1965. Petitioner then sought review in this court of the validity of the foregoing order and of the new subpoena duces tecum by petition for writ of prohibition which was denied without prejudice on July 13, 1965.[2]

For the reasons hereinafter set forth it is concluded that the order to produce exceeds the power of the lower court, and the restraint on its enforcement should be made permanent.

---

[2] 1 Civ. 22939—The order reads: "It appearing that at the present time no deposition of petitioner is scheduled to be taken and that the cause has not been set for trial, and that petitioner is therefore under no compulsion to appear and produce any books, documents or other things pursuant to a subpoena duces tecum either at a deposition or at trial, the petition for a writ of prohibition is denied without prejudice."

Real party in interest points to that portion of section 1985 of the Code of Civil Procedure which provides: "It [the subpoena] may also require him to bring with him any books, documents, or other things under his control which he is bound by law to produce in evidence." She asserts that petitioner, as president of the corporation, has control of its records, and may therefore be required to produce them. (See *Filipoff* v. *Superior Court* (1961) 56 Cal.2d 443, 449-450 [15 Cal.Rptr. 139, 364 P.2d 315].) The solution is not so simple. In seeking the corporate records real party in interest is in effect seeking to take the deposition of the corporation. (See *Chronicle Publishing Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 571-574 [7 Cal.Rptr. 109, 354 P.2d 637]; and see *McLain* v. *Superior Court* (1950) 99 Cal.App.2d 109, 115-117 [221 P.2d 300].) Petitioner's alleged control over the records, as president, is not derived from any facts having a situs in or from the law of this state, but is entirely dependent on the law of the State of Nevada. It is necessary therefore to determine whether or not the corporation itself is amenable to process within this state. In *Riverside etc. Mills* v. *Menefee* (1914) 237 U.S. 189 at pages 194-195 [35 S.Ct. 579, 59 L.Ed. 910], the applicable rule is stated as follows: "[I]t is indubitably established that the courts of one State may not without violating the due process clause of the Fourteenth Amendment, render a judgment against a corporation organized under the laws of another State where such corporation has not come into such State for the purpose of doing business therein, or has done no business therein, or has no property therein, or has no qualified agent therein upon whom process may be served; and that the mere fact that an officer of a corporation may temporarily be in the State, or even permanently reside therein, if not there for the purpose of transacting business for the corporation or vested with authority by the corporation to transact business in such State affords no basis for acquiring jurisdiction or escaping the denial of due process under the Fourteenth Amendment which would result from decreeing against the corporation upon a service had upon such an officer under such circumstances."

Where the converse is true and the foreign corporation is for many purposes a resident of a second state because it holds its directors' meetings within that state, has its principal place of business and does part of the corporate business within that state, and the directors reside within that state, the court of the second state may exercise jurisdiction over the corporation and its resident officers and directors to compel the perform-

ance of acts without the state. (*Hobbs* v. *Tom Reed Gold Min. Co.* (1913) 164 Cal. 497, 500-501 [129 P. 781, 43 L.R.A. N.S. 1112].) The court in that case, however, recognized: "Our personal writs cannot run to persons who are not present in the state and they cannot be enforced upon real property beyond its limits. The writ of mandate cannot be invoked to compel performance of an act which cannot be performed within this state but must be done, if at all, at some place in another state. So far as these objections go the refusal of the writ was proper." (164 Cal. at p. 500.) So here, in the absence of jurisdiction over the corporation, our courts cannot compel an officer over whom only personal and not representative jurisdiction has been acquired to produce the records of a foreign corporation, and thus do indirectly that which could not be done directly.

An examination of numerous cases dealing with the power to compel the production of records held outside the jurisdiction by process executed locally (see cases collected Annotation (1962) 82 A.L.R.2d 1403) reflects that enforcement has been predicated (1) upon the fact that the records belonged to a party to the action over whom or which the court had jurisdiction, or (2) the owner of the records was doing business within the jurisdiction and thereby subject thereto. Even in the latter cases some restraint has been exercised where branch operations are concerned and the records do not apply to transactions within the jurisdiction. (See *Ings* v. *Ferguson* (2d Cir. 1960) 282 F.2d 149, 151-153.)

The situation is closely similar to that in *John Deere Co.* v. *Cone* (1962) 239 S.C. 597 [124 S.E.2d 50]. There an intermediate court ruled that by service upon an agent designated pursuant to statute by a foreign corporation for the receipt of process, the South Carolina domestic relations court, contrary to its own ruling, had acquired jurisdiction (1) to require the production of original corporate records concerning the employment of the ex-husband by the corporation's Atlanta, Georgia branch, (2) to order the corporation to withhold from his salary and pay to the former wife, or her attorney, current and delinquent alimony, and (3) to compel the president of the corporation to answer certain written interrogatories at Moline, Illinois. The Supreme Court of South Carolina stated: "The rule to show cause, although directed to John Deere Plow Company, was in reality a subpoena *duces tecum* insofar as it purported to require production in the Juvenile-Domestic Relations Court of the company's original records, admittedly located in another state. In that aspect the attempted proce-

dure was both faulty and ineffectual. It was faulty because a subpoena *duces tecum* should be directed to the witness in whose control are the records or documents sought to be brought into court. Cf. Code 1952, Section 15-1154, relating to the issuance of such subpoenas by the Judge of the Juvenile-Domestic Relations Court. The procedure here attempted cannot be sustained as the permissible examination of an adverse party under the discovery provisions of Title 26, Chapter 7, of the 1952 Code, because the company was not a party to the action. It was ineffectual as a subpoena because the courts of this state are without jurisdiction over persons or property outside of its territory. *Pennoyer* v. *Neff*, 95 U.S. 714 [24 L.Ed. 565]; *Tillinghast* v. *Boston & P. R. Lumber Co.*, 39 S.C. 484 [18 S.E. 120, 22 L.R.A. 49]." (Pp. 602-603.)

In respect to the interrogatories the court ruled: "Having no jurisdiction over persons in another state, the Juvenile-Domestic Relations Court was without power to compel Mr. Hewitt, the President of John Deere Company, to appear at Moline, Illinois, and there answer the proposed interrogatories. That motion was properly denied." (P. 604; and also see *People* v. *Burgess* (1927) 244 N.Y. 472, 473 [155 N.E. 745].)

■ Although in this case petitioner is alleged to have control of the corporate records, he can only exercise that control through the powers conferred upon him by Nevada law. The service here is therefore just as ineffectual, if not as faulty, as that in the case last cited.

■ Real party in interest is not without a remedy. She may seek the aid of the Nevada courts in securing such evidence as lies within that state. (See *Ings* v. *Ferguson, supra*, 282 F.2d 149, 151-153; Code Civ. Proc., §§ 2024, 2025; and cf. *idem.* § 2023 and Nev. Rev. Stats. § 48.260 et seq.) The assertion that such proceedings may not be as revealing as proceedings under local law because of Nevada rules as to the scope of such an examination, or Nevada policy as to the disclosure of specific corporate information, is not justification for exercising jurisdiction where none exists. ■ This state cannot impair the right of Nevada to control the property and affairs of an entity which it has created, and which has never left the protection of the parental domicile.

Let the peremptory writ issue permanently restraining respondent from enforcing that portion of the order of July 29, 1965, purporting to require petitioner to produce records of the Nevada corporation.

Sullivan, P. J., and Molinari, J., concurred.