BRevaRD, J.
This was an action of assumpsit, to recover the price paid for a negro slave, on the ground that the plaintiff was deceived in the contract, and gave a large price for the slave, viz., $500, Under an expectation, which was well warranted by the slave’s appearance, that he was fully worth that price, when, in fact, he was not worth near so much, being a notorious runaway ; and that his bad qualities were concealed from the plaintiff at the time of the sale. The plaintiff gave evidence at the trial, of the bad character of the slave, and payment of the money, in consideration of the sale : also, the defendant’s bill of sale of the slave to the plaintiff, warranting the property, but expressing nothing as to his character, qualifications, or disposition. The defendant objected to the admission of any evidence to prove the bad character, or ill qualities of the slave, on the ground, that the bill of sale, which Contained the written evidence of the contract, was silent on that head; and that no verbal testimony could be given to add to the •teiffis or conditions of a contract reduced to writing; nor could any terms or conditions be implied, other than such as might arise from the written instrument produced in evidence.
This objection was overruled ; and the jury found a verdict for the plaintiff, in the following terms: “ We find for the plaintiff seven hundred dollars, and that the defendant shall have his negro again, and shall bring him, at his own expence, from Fayetteville, in North Carolina.”
The motion submitted to this court is for a new trial, on the ground, that as the action is to recover the price paid for the slave, by reason of unsound ness, and mistake in the contract, the jury was not authorized to award a greater sum than the amount of the consideration money paid, and interest.
It has also been contended, that the evidence which was objected to at the trial, was improperly admitted to go to the jury. But this ground was very little insisted on, and, therefore, need not be taken into consideration. Suffice it to say, that in my opinion, the objection cannot be maintained; and that an express warranty of the property cannot be fairly construed to intend an exclusion of the natural implied warranty of soundness.
In the argument on the first ground, it was contended, that the *65 action 'was misconceived ; and that to authorize a recovery on the grounds of fraud, or deception, the plaintiff ought, to have brought trespass on the case, and declared specially in tort. But it seems now to be the settled law, although I know not when or how it was introduced, that, in an action of assumpsit, the plaintiff may recover upon an express warranty, and also upon.an implied warranty, where there has been any fraud in the contract. But, in every such case, the declaration must contain a special count, stating the warranty and breach of it; or the circumstances of fraud, amounting to an implied warranty, with an express allegation, that the defendant knowingly or fraudulently sold, &c. In this State, the doctrine has been extended to cases of legal fraud, or mistake, where both parties may be presumed to have been ignorant of the unsoundness or defect, which is afterwards insisted on as sufficient to disannul the contract altogether, or authorize a deduction from the price paid. In such case, however, the declaration need not state a scienter, nor a warranty express ; but only, that by selling under the circumstances set forth, the defendant thereby warranted, &c.
It is stated in the brief in this case, that the plaintiff’s declaration contained several counts, and that one of .them is a special count. It is not stated what sort of count the special count is. We may presume, and, I think, ought to conclude, that it is in due form, according to the case in Douglas’s Reports, 18, Stewart v. Wilkins.
If so, it is sufficient to support the verdict for damages to any reasonable amount. The general 'counts are usually added, in order, that should the plaintiff fail in the proof of the special count, he may nevertheless prevail in some of the general counts, and recover back his money paid.
In my opinion, it would be advisable in every case, where the proof may be doubtful, to declare specially on an express warranty, or an implied warranty, on the ground of intentional fraud, in which the scienter must be stated, or some equivalent allegation, and also on an implied warranty, founded on the ignorance of both the contracting parlies, in which a scienter need not be alleged. Perhaps the latter count may be unnecessary, as included in the implied warranty, with a scienter, and would authorize a recovery of the money paid, without any proof of knowledge on the part of the seller, if the defect is proved to have existed at the time of the sale. If the proof at the trial should falsify the express warranty, or establish the fact of the sale having been deceitful on the part of the seller, the plaintiff would be entitled to recover not only full *66 satisfaction- for the injury he may have sustained by the false war* ranty, or fraudulent sale, but also exemplary damages, to discourage falsehood and fraud.- If the evidence at the trial should he insuffi-c*ent to establish a claim to vindictive damages, the plaintiff may nevertheless be entitled to a rescisión of the contract, on the ground of ignorance and mistake; or to some allowance, by way of abatement, of the price paid, according to circumstances. The use which the purchaser may have had of the thing sold, if it has been profitable, ought to be considered. In England, no action lies upon an implied warranty of soundness, except on the ground of fraud. But in this Stale, it has been repeatedly held to lie on the ground of-legal fraud, or mistake.
In the present case, it has not appeared that the defendant knowingly and fraudulently sold the slave to the plaintiff, from any evidence stated to us. But the objection is not to the insufficiency of the evidence, but to the insufficiency of the declaration to support the verdict. We must, therefore, presume that there was evidence to prove the charges set forth in the declaration. On this ground, I am inclined to support the finding of the jury ; but the verdict is expressed in such terms, that I cannot see how it can, with propriety, be sanctioned. The jury must have contemplated a return of the slave to the defendant, and damages are predicated on the supposed possibility and liability of the plaintiff to surrender the slave, and the supposed practicability of obtaining possession of him by the defendant, by going into North Carolina for him. In some cases the purchaser has an absolute right to put an end to a contract, atid to return the thing purchased, or rather a'greed to be purchased ; but this can only be where, by the very terms of the contract, the right to do so is expressly reserved. In such cases the contract remains open until the purchaser has made his election, which must be made within the time agreed on, or if no time be expressly agreed on, within a reasonable time. If the buyer elects, in due time, to disclaim, or disaffirm the contract, he is bound to return the thing, or subject of the contract, or offer to do so pursuant to the terms of .the agreement, or if no lime be agreed on, within a reasonable time, if in his power to do' so ; and if not in his power, to give notice to the seller of his inability to do so within a reasonablo time, if practicable.
There are other pases wherein the purchaser has not this absolute right to disaffirm or rescind the contract, but in which he has a legal, conditional, or qualified right to do so, in consequence, not of any convention or agreement of the parties, but of his having *67 been deceived and defrauded in the contract. In such cases, if be means to disclaim and set aside the' contract altogether, and reclaim the consideration money, and also damages, it appears to me necessary, to entitle him to succeed, that he should return, or offer to return, the subject of sale within a reasonable time alter the discovery of the fraud, if in his power, or use due diligence in order to do so, and give due notice to the seller of his intention to disclaim the contract, and restore the subject of it. If he discharges ,his duty, he will be entitled to not only the consideration money' paid, upon proof of the fraud, but also interest, and exemplary damages for the imposition practised.
The suhject of the sale, in such case, must be considered as belonging to the seller from the time that notice is given to him, and diligence used to return the property. But if the buyer neglects to discharge his duty in such case, although he should prove the fraud, and should appear clearly to be entitled to damages, yet the contract could not be considered as rescinded, but still in force, and binding on both parties. In case of legal fraud, or mistake, the same doctrine would hold good, only that the buyer would not be entitled to any other damages than such as he could prove he had actually sustained. But if he should take proper measures, and use due diligence to restore the seller to the possession of the subject of sale, in due time, he would be entitled to disclaim the contract, and set it aside, and reclaim the whole of the consideration money paid, secured, or promised to be paid.
To apply this doctrine in the present case, it must be inquired and ascertained, whether the contract was legally dissolved, either by the agreement of the parlies, or by operation or implication of law, under such circumstances as were sufficient to authorize the buyer to disclaim and disannul it. From the evidence reported to have been given at the trial, it has not appeared that the plaintiff performed what was necessary on his part, to do away the obligation to abide by the contract. The jury, therefore, had no power to repeal the contract, or discharge the plaintiff from his obligation to conform to it. But the jury, it seems by the verdict, did undertake to rescind the contract, and not only to discharge the plaintiff from it, and compel the defendant to take back the thing sold, but to release the plaintiff from any obligation to restore the thing.
The verdict imposes on the defendant the duty of seeking, in a distant place, beyond the limit's of this State, for the property in question ; which, perhaps, he may never find, and which, if found, he may be never able to obtain; and get the same again, if he can, *68 at his own risk and charge: and it imposes no reciprocal or equivalent duty on the plaintiff.
The verdict, therefore, appears unreasonable and unjust, as well as unlawful; for there is no law to warrant a verdict of this sort, . „ . , . ,, it it were ever so fair and equitable.
But this is not all. The plaintiff may yet insist, the verdict to the contrary notwithstanding, that the slave is his property, and refuse to surrender his claim to him under the sale. If he should do so, who shall gainsay it ? Can any judgment be entered up for the defendant on this verdict, by which he may regain the posses. sion of the slave 1
New trial granted.