### BANK OF JOHNSTON v. JONES *ET AL.*

(139 S. E., 190)

1. PLEADING—DEMURRER ADMITS TRUTH OF ALLEGATIONS OF FACT IN COMPLAINT.—A demurrer admits as true allegations of fact in the complaint.

2. PLEADING—COMPLAINT STATING CAUSE OF ACTION IS NOT DEMURRABLE, THOUGH IT ALLEGES CONTRADICTORY MATTERS.—A complaint, though it alleges contradictory matters, is not demurrable if it states a cause of action.

3. PLEADING—COMPLAINT STATING FACTS ENTITLING PLAINTIFF TO EITHER LEGAL OR EQUITABLE RELIEF IS NOT DEMURRABLE.—A complaint is not demurrable if it states facts which would entitle the plaintiff to either legal or equitable relief.

4. BROKERS—BANK'S COMPLAINT IN ACTION AGAINST PURPORTED REAL ESTATE BROKERS HELD TO STATE CAUSE OF ACTION FOR DECEIT CAUSING LOSS OF SECURITY.—Complaint alleging that plaintiff bank having mortgage on tract of land induced owners to make a contract with defendants for sale of land by defendants, who were to receive all of purchase price in excess of $30,000, which was to be paid to the bank in the form of cash or purchase-money notes and applied on indebtedness of owners, that defendants divided the property into two parcels and later reported a sale of the larger parcel for $30,000 and induced bank to release mortgage on whole tract and to accept approximately $6,000 cash and purchase-money notes totaling $30,000, secured by mortgage on only that portion of the land sold, and alleging further that purported purchaser was a financially irresponsible dummy, who did not carry out contract

NOTE: As to the general rule of necessity of placing other party in *statu quo* on rescission of contract, see annotation in 30 L. R. A., 44; 6 R. C. L., 936; 2 R. C. L. Supp., 249; 5 R. C. L. Supp., 380; 6 R. C. L. Supp., 420.

and whose payment of $6,000 was in fact furnished by defendants, who obtained smaller tract for themselves free from incumbrances, *held* to state cause of action for deceit causing loss of security to bank.

5. FRAUD—DEFRAUDED PARTY TO CONTRACT MAY TENDER BACK CONSIDERATION AND SUE FOR RESCISSION, OR RETAIN CONSIDERATION AND SUE FOR DAMAGES.—Party to contract on discovering fraud may elect to tender back the consideration and sue for rescission, or to retain the consideration and sue for damages sustained by reason of the fraud.

6. BROKERS—BANK HELD ENTITLED TO SUE FOR PURPORTED REAL ESTATE BROKER'S DECEIT IN CARRYING OUT CONTRACT WITHOUT TENDERING BACK CONSIDERATION RECEIVED.—Bank, damaged by purported real estate broker's fraud in carrying out contract, *held* entitled to maintain action for damages for deceit without tendering back consideration received.

7. PLEADING—ON DEMURRER, COMPLAINT SHOULD BE LIBERALLY CONSTRUED.—On demurrer, complaint in action for damages for deceit should be liberally construed.

Before GRIMBALL, J., Greenwood, April, 1926. Affirmed.

Action by the Bank of Johnston against C. E. Jones and another. From an order overruling a demurrer to the complaint, defendants appeal.

The following are the complaint, the contract, and defendants' exceptions:

## COMPLAINT

"The plaintiff, complaining of the defendants herein, respectfully shows unto the Court:

"I. That the plaintiff, the Bank of Johnston, is, and at the time mentioned in this complaint was, a banking corporation organized and existing under the laws of the State of South Carolina, with legal capacity to sue and be sued, with its principal place of business at Johnston, in the County of Edgefield, State of South Carolina.

"II. That the false pretenses and representations made to the plaintiff as hereinafter stated were made to W. B. Ouzts, vice president, and J. M. Edwards, cashier of the plaintiff, and as its agents and acting in the scope of their duties for it in the transactions hereinafter enumerated, and

the false impressions hereinafter mentioned were made upon the two said agents of the plaintiff acting in the scope of their duties for it.

"III. That the defendant C. E. Jones is a resident and citizen of Lexington County, in the State of South Carolina, and the defendant S. F. Perry is a resident and citizen of the county of Greenwood, in the State of South Carolina.

"IV. That at the times mentioned in this complaint, the defendants C. E. Jones and S. F. Perry pretended and represented to the plaintiff that South Atlantic Realty & Auction Company was a corporation with its principal place of business at Greenwood, S. C., and engaged in the real estate business, buying and selling lands, but in truth and in fact the said pretenses and representations were false and known to the defendants C. E. Jones and S. F. Perry at the time they were made to be false, for in truth and in fact there was no such corporation doing business at Greenwood, or elsewhere in the State of South Carolina, and the two said defendants by said false pretenses and representations fraudulently and willfully deceived this plaintiff and induced it to influence J. W. Marsh and J. F. Marsh to execute the contract marked Exhibit A and made a part of this complaint, and to give the plaintiff's consent thereto and to become a party to said contract; and the said contract and all transactions relative thereto and all transactions made pursuant thereto were for the benefit of the two said defendants and to accomplish their selfish design.

"V. That on the 23d day of March, 1921, J. W. Marsh and J. F. Marsh were seized and possessed in fee of a certain lot of land situate, lying, and being in the city of Columbia, county of Richland, in the State of South Carolina, and containing about four acres, and bounded by Wheat, Lincoln, Rice, and Gadsden Streets; and on the 24th day of February, 1921, J. W. Marsh and J. F. Marsh made, executed, and delivered to the plaintiff their four promissory notes for $5,000 each; two payable on November 15, 1921,

and two payable on December 13, 1921, and on the 23d day of March, 1921, the two said Marshes in order to secure the payment of said notes made, executed, and delivered to this plaintiff a mortgage on the premises aforesaid, and subsequently with the consent of plaintiff sold to Southern Railway Company a small strip of land from said lot; and thereafter the said two Marshes and this plaintiff agreed and decided to sell the balance of said lot of land, and the plaintiff agreed to accept the proceeds of the sale of the same in payment of the said four notes and other indebtedness due it by the two said Marshes to the extent of $30,000; that is, the plaintiff was to allow the two said Marshes a credit of $30,000, including said four notes, on their indebtedness to it; and the two said Marshes authorized and empowered the plaintiff to make any arrangement satisfactory to it for the sale of said lot of land and agreed to execute and deliver deeds in fee of the said balance of said lot of land to any person or persons named by the plaintiff and to carry out any agreement or contract made by the plaintiff for the sale of said lot or parcel of land, of all of which the defendants had full notice when the plaintiff had the transaction herein mentioned with them.

"VI. That pursuant to the agreement referred to in the preceding paragraph hereof between J. W. Marsh and J. F. Marsh and this plaintiff, the plaintiff on March 11, 1924, entered into an agreement with the supposed corporation, South Atlantic Realty & Auction Company, by its supposed and pretended agents, C. E. Jones and S. F. Perry, whereby the said pretended corporation was to sell the said lot of land, less the strip sold to the Southern Railway Company, for the consideration of any sum of money the said pretended and supposed corporation received in excess of $30,000; and the plaintiff agreed to accept as part payment on said amount purchase-money notes and mortgages executed therefor on portions of said premises according to the terms of said contract, and the plaintiff in carrying out its part of

said agreement had the said J. W. Marsh and J. F. Marsh to sign and execute the contract aforesaid marked Exhibit A, as parties of the first part, and the supposed and pretended corporation, South Atlantic Realty & Auction Company, by C. E. Jones, its manager, sign the said contract as party of the second part, and the plaintiff consented to said contract and signed a separate instrument of writing attached to said contract consenting thereto, and the two said instruments of writing signed by the two Marshes and the pretended and supposed corporation, South Atlantic Realty & Auction Company, and the plaintiff constituted one transaction and one contract; and then the two defendants, pretending to act for the supposed corporation aforesaid, cut the said lot of land into two subdivisions in the ratio of about four-ninths and five-ninths, and the smaller subdivision had a brick warehouse on it, and each of the said subdivisions was and is of the value of $15,000; and the two Marshes aforesaid had no further interest in the said lot except to carry out any contract made by the plaintiff relative to the sale of the same, and the defendants well knew this and knew that any sales of the said lot of land were for the benefit of the plaintiff and that the plaintiff was to have all the proceeds from the sale thereof up to the amount of $30,000, and the excess of $30,000 belonged to the supposed corporation.

"VII. That on the 31st day of March, 1924, the two defendants pretending to act for the said supposed corporation, but really acting for themselves, and in order to accomplish their own selfish ends, fraudulently pretended and represented to the plaintiff that they had made a sale of the larger subdivision of the said lot of land, to wit: 'All that lot, parcel or piece of land lying, being situate within the city of Columbia, Richland County, S. C., having a frontage on Wheat Street of 242.42 feet, and extending for an equal width along Gadsden Street for a distance of 417.42 feet to right of way of Southern Railway Company, and being

a portion of the property more fully described on a map made by Tomilson Engineering Company, Columbia, S. C., April 22, 1922. It is understood from the southwest corner a parcel of the land has been sold to the Southern Railway Company, and measuring 30 feet on Gadsden Street and 90 feet along Southern Railway right of way and as set out on map aforesaid'—for the sum of $30,000, to C. A. Perry, $6,064.45 cash, and the balance of the purchase money, $23,935.55; evidenced by three notes, secured by a mortgage of the said portion sold, and said notes were dated March 31, 1924, and made payable as follows: One on March 31, 1925, for $7,978.52; one on March 31, 1926, for $7,978.52; one on March 31, 1927, for $7,978.51.

"VIII. That the two defendants pretending to represent a corporation named South Atlantic Realty & Auction Company for the consideration aforesaid, that is, all money collected by them for the said lot of land in excess of $30,000, proceeded to offer said lot of land for sale as subdivided, and as the two defendants pretending to represent the said corporation were acting as agents for the plaintiff and therefore in a fiduciary capacity for the plaintiff, were intrusted and given the special confidence of the plaintiff to sell both of said subdivisions of said lot of land; and the said C. E. Jones and S. F. Perry wrongfully, unlawfully, willfully, and fraudulently agreed, colluded, and conspired together to cheat and defraud the plaintiff of $9,000 of the security held by it as aforesaid, and to induce the plaintiff to part therewith, and to obtain the smaller subdivision of the said lot covered by the said mortgage for themselves without any consideration whatsoever to the plaintiff or the said Marshes; and in furtherance of said unlawful, fraudulent, and deceitful scheme pretended and represented to the plaintiff as aforesaid that the defendants had made a sale of said larger subdivision of said lot to C. A. Perry for the consideration of $30,000 and on the terms aforesaid; and the defendants, by pretending and representing that a sale

of the larger subdivision of the said lot had been made to C. A. Perry for $30,000 on the terms aforesaid, induced and persuaded the plaintiff, who believed said pretenses and representations to be true, to have the said J. W. Marsh and J. F. Marsh execute and deliver to the said C. A. Perry a good marketable title in fee of the said larger subdivision of said lot, and to cancel and have marked satisfied of record the mortgage held by this plaintiff as aforesaid on the whole of the said Marsh lot; and the defendants by this device and fraud caused the plaintiff to part with the whole of its security covering the two said subdivisions of said lot for $30,000, and to accept in lieu of said security $6,064.45 in money and the notes aforesaid executed to it by the said C. A. Perry and a mortgage to secure the same of only the said larger subdivision of said lot for $23,935.55; and thereby further induced the plaintiff to have the said J. W. Marsh and J. F. Marsh execute a good marketable title in fee in blank of the said smaller division of said lot, and the plaintiff is informed, believes, and alleges that subsequently the name of J. R. Unger, a brother-in-law of the said C. E. Jones, was inserted as grantee in said deed of the smaller subdivision of said lot.

"IX. That the two defendants, pretending to represent the South Atlantic Realty & Auction Company as aforesaid, fraudulently, deceitfully, and willfully pretended and represented to the plaintiff that a sale of the said premises had been made to the said C. A. Perry, and the said C. A. Perry with the connivance of the said defendants likewise fraudulently pretended and represented to the plaintiff that he had purchased the said larger subdivision of said lot of land, and that he must have a marketable title to the same at once and the record cleared of any incumbrances against it; and further pretended and represented that he had an offer to purchase said lot of him at a handsome profit to him, whereas, in truth and in fact, no real sale had been made of the said larger subdivision of the said lot of land to the

said C. A. Perry, and he had no opportunity to sell the same to any other person at a profit; but the said pretended sale by the defendants of the said larger subdivision of said lot to C. A. Perry as aforesaid, was sham, fictitious, and false and the representations made by the defendants to the plaintiff of the sale aforesaid were made for the purpose of defrauding and deceiving the plaintiff of $9,000 of its mortgage security aforesaid, and resulted in the loss and diminution by the plaintiff of its security aforesaid to the amount of $9,000; and the plaintiff is informed, believes, and alleges that the two defendants paid to the said C. A. Perry $250 in money for his fraudulent and deceitful services in the said sham, fictitious, and false sale, and the defendants and not C. A. Perry furnished the cash payment, pretendedly and fraudulently made as the cash payment by C. A. Perry on the purchase price thereof, to wit, $6,064.45.

"X. That the plaintiff is informed, believes, and alleges that the said C. A. Perry, at the times of said transactions with the said Marshes and this plaintiff, was insolvent, and he had little, if any, property, was a man of little, if any, business capacity, and irresponsible in his money obligations, all of which the defendants well knew at the times of the transactions hereinabove mentioned, and the said C. A. Perry was selected by the defendants as a 'dummy' in the transactions aforesaid, so they could pretendedly and fraudulently sell said subdivision of land for twice its real value, and the defendants knew that the said C. A. Perry did not intend to pay the balance of the purchase money, and that any notes and mortgage executed by him for the balance of the purchase money would not be paid and could not be collected.

"XI. That the two defendants jointly and fraudulently breached their contract aforesaid with the plaintiff, as aforesaid, and breached their implied warranty to the plaintiff to act in good faith, honestly, and fairly with the plaintiff in the sale of the two said subdivisions of the said lot of land,

and to make a genuine and real sale of the sale to a person with reasonable business qualifications and responsibility, and who intended in good faith to carry out his purchase contract, but the defendants as agents of the plaintiff fraudulently breached their duty to it as aforesaid.

"XII. That this plaintiff has recently learned of the fraud and deception perpetrated upon it by the defendants aforesaid.

"XIII. That the status of the parties to the transactions aforesaid, and of the property involved, has so changed that it cannot be restored.

"XIV. That one of said notes executed by the said C. A. Perry is past due and unpaid, and he has defaulted in the payment of the taxes due on said premises and breached his part of said agreement to purchase said premises, though the plaintiff, and the two said Marshes, acting on the advice of the plaintiff, have performed fully their part of said contract, marked Exhibit A.

"XV. That the joint fraud and deceit of the two defendants directly caused the plaintiff to cancel and satisfy the original mortgage on all of said lot executed to it by the two said Marshes as aforesaid and to accept in lieu thereof, a mortgage on the larger subdivision of said lot for the sum aforesaid, and $6,064.45 in money, in payment of $30,000 on the indebtedness to it, by the two said Marshes; and thereby the plaintiff lost its lien entirely on the said smaller subdivision of said lot and the said larger subdivision of said lot is not worth more than $15,000, so in the manner aforesaid the defendants fraudulently and deceitfully procured the diminution and reduction of the plaintiff's security as aforesaid, on the lot of land aforesaid, and obtained a deed of conveyance in fee of said smaller subdivision of said lot, clear of incumbrances, to said J. R. Unger, and the defendants were the beneficiaries of said fraud and deceit in the sum of $9,000.

"XVI. That the joint, fraudulent, deceitful, and willful acts and conduct of the defendants as aforesaid were a willful invasion of the plaintiff's private rights, and directly caused to this plaintiff actual damages in the sum of $9,000 and punitive damages in the sum of $16,000.

"XVII. That the said defendants C. E. Jones and S. F. Perry in all the matters aforesaid were not acting for a corporation or for a company, but for themselves, and all of the pretenses and representations aforesaid relative to the sale of said lot of land were falsely, deceitfully, and willfully made for themselves in the perpetration of their fraudulent scheme aforesaid upon this plaintiff, and there was a fraudulent and willful failure of consideration passing from the defendants to this plaintiff for the smaller subdivision of the said lot of land deeded in blank as aforesaid with the name of J. R. Unger subsequently filled in, and there was likewise a fraudulent and willful failure of consideration passing from the defendants to this plaintiff for the reduction and diminution of the plaintiff's security as aforesaid.

"Wherefore plaintiff demands judgment against the defendants for the sum of $25,000, and the costs of this action.

"W. H. Nicholson,
"Thurmond & Daniel,
"Attorneys for Plaintiff."

EXHIBIT A TO COMPLAINT

"Johnston, S. C., March 11, 1924.

"South Atlantic Realty and Auction Company, Greenwood, S. C., Batesburg, S. C.—Gentlemen: In order to promote the sale of our property, to wit, located within the city of Columbia, S. C., near the Union Depot (railroad), between Lincoln and Gadsden Streets, as per drawing attached, and all improvements therein, we hereby employ the

services of your company to subdivide the same and to offer
it as a whole, or in parts, or subdivisions, at your option,
at private or at public sale, one or both, and upon the fol-
lowing terms and conditions, to wit:

"'Terms of the sale and/or sales may be fixed by you on
a basis of 25 per cent. cash, the balance in three equal annual
payments, with interest on the deferred payments at the
rate of 8 per cent. per annum, payable annually, the de-
ferred payments to be closed by notes of the purchaser, and/
or purchasers secured by purchase money mortgage, and/or
mortgages, over the respective subdivision, and/or sub-
divisions, sold.

"The amount of the sale price is fixed by us at the sum
of $30,000; however, you are given the right and privilege
of selling the property, as a whole or in subdivision, for a
total larger amount; you are to receive as your commission
and expense in promoting and selling the property all over
and above said fixed price of $30,000 for which the prop-
erty sells, and in cash, if possible; however, if the cash pay-
ments will not permit of the payment to you in cash of the
amount you are to receive as your commission and expense in
promoting and selling the property, and at the same time
leave us $6,000 in cash, you agree to accept your propor-
tion of the purchase-money notes and mortgages and to de-
liver to us $6,000 in cash and purchase-money notes and
mortgages of the purchaser and/or purchasers, over sub-
divisions of the property, to an amount of $24,000.

"We agree to execute and deliver to the purchaser and/or
purchasers good and sufficient deed and/or deeds to the
respective subdivisions sold, upon the payment by them of
the 20 per cent. in cash, and the execution and delivery of
the purchase-money note and mortgages as aforesaid.

"Provided, however, on any amount for which the total
of the property sells and up to $40,000, we are to receive
$6,000 in cash as aforesaid, and purchase-money notes and
mortgages to an amount of $24,000; in the event the prop-

erty sells for more than $40,000, as a whole, or as a total in subdivisions, and 25 per cent. or more of the purchase price is paid in cash, we are to receive the $6,000 in cash as hereinbefore mentioned, and 75 per cent. of the additional cash payments over and above the first $10,000 paid in, and in which event the total amount of purchase-money notes and mortgages coming to us is to be proportionately reduced.

"We are to receive and accept mortgages on subdivision and/or subdivisions securing an indebtedness not greater than 25 cents per square foot of real estate.

"The above property is listed with you for a period of two months from this date; at the expiration of said period of time this agreement is void, unless extended by all parties in writing.

"This agreement binds ourselves, our heirs, our assigns, executors, administrators and successors.

                    "(Signed) J. W. MARSH (L. S.)
                    "(Signed) J. F. MARSH (L. S.)
"Witness:   J. M. EDWARDS,
          "J. C. CULBREATH,
              "As to J. W. Marsh.
          "J. R. UNGER,
          "McKINNIE HARTLEY,
              "As to J. F. Marsh.

"Accepted this 11th day of March, 1924.   South Atlantic Realty & Auction Company, by ———— Jones, Assistant Manager."

                              "March 11, 1925.
"South Atlantic Realty & Auction Company, Greenwood, S. C., Batesburg, S. C.—Gentlemen:   With reference to the purchase-money notes and mortgages mentioned in the contract on the reverse side of this instrument, you will

please make all such papers coming to us payable to the
Bank of Johnston, S. C.

"(Signed) J. W. MARSH (L. S.)

"(Signed) J. F. Marsh (L. S.)

"Witness:   J. M. EDWARDS,

"J. C. CULBREATH,

"As to J. W. Marsh.

"McKINNIE HARTLEY,

"J. R. UNGER,

"As to J. F. Marsh."

"For and in consideration of the sum of $1 to us in hand
paid, the receipt of which is hereby acknowledged, and other
good and valuable consideration, we hereby agree to the
contract entered into on the reverse side of this instrument
by and between J. W. Marsh and J. F. Marsh and South
Atlantic Realty & Auction Company, and further agree
that when and if the cash payment and the purchase-money
notes and mortgages aggregate $30,000, as therein set out,
are made payable to and are delivered to us, we will release
and relinquish our claim or claims on the said property, and
accept in lieu thereof the said $30,000 in cash and purchase-
money notes and mortgages, crediting the indebtedness of
J. W. Marsh & Son to us with the said amount of $30,000.
The Bank of Johnston (L. S.), Johnston, S. C.,

By J. M. EDWARDS.

"Witness:   W. B. OUZTS.

"J. C. CULBREATH."

EXCEPTIONS

"(1) The presiding Judge erred in not sustaining the de-
murrer, and holding that the complaint does not state facts
sufficient to constitute a cause of action.

"(2) The presiding Judge erred in not ruling and holding
that the contract, which was made a part of the complaint,

was a valid obligation, binding upon all parties thereto in respect to the sale and disposition of the real estate therein mentioned and described.

"(3) The presiding Judge erred in not holding that the terms of said contract were fully complied with and duly carried out by all parties thereto, and that the plaintiff had received and accepted full benefits and considerations moving to it therein, and that it now held enjoyed the same without any offer of a return thereof.

"(4) The presiding Judge erred in not holding and ruling that there are not facts alleged in the complaint showing any injury to the plaintiff by reason of any fraudulent or deceitful representations of the defendants, either willful or otherwise.

"(5) The presiding Judge erred in not holding that the allegations of the complaint showed no invasion of any private right of the plaintiff, and that the complaint showed on its face that the plaintiff duly entered into said contract, that the same has been fully carried out by all parties thereto, and that the plaintiff was holding and enjoying the full benefits thereunder, and that it had sustained no damages thereby for which it could maintain this action.

"The foregoing exceptions are taken for the benefit of both appellants."

*Mr. Geo. Bell Timmerman,* for appellants, cites: *Construction of contract:* 14 A. S. R., 406. *Demurrer does not admit conclusions of fact or of law:* 135 A. S. R., 537. *Where relation of the parties to each other fixed by writing, such relation cannot be changed by parol:* 80 Am. Dec., 462; 4 R. C. L., 269. *"Fraud":* 32 Am. Rep., 86; 126 S. C., 217. *Parties to a written contract bound by conditions therein:* 3 Brev., 31; 129 S. C., 230. *Duties of real estate broker:* 86 S. C., 79, 80. *Failure of parties to contract to exercise due diligence in protection of rights waives right to call upon Courts to protect from own carelessness:* 101. S. C., 232; 2 Strob. Eq., 153; 6 L. R. A., 221; 12 R. C. L.,

301; 107 S. C., 204. *When a principal authorizes an agent to sell land upon certain terms, estopped from later refusing to approve such sale:* 48 S. C., 496. *Cannot maintain action on contract for fraud without tendering back price paid:* 97 S. C., 34; 56 S. C., 508. *Cases distinguished:* 94 S. C., 314; 52 S. C., 244; 86 S. C., 576; 79 S. C., 208.

*Messrs. Thurmond & Daniel* and *W. H. Nicholson,* for respondent, cite: *A complaint attacked by demurrer must be liberally construed:* 51 S. C., 439; Sec. 420, Code Civ. Proc.; 112 S. C., 551. *Equity regards the relation of agency with nearly the same strictness as that of trustee and beneficiary:* 27 S. C., 498. *Punitive damages may be awarded for deceit of agent:* 70 S. C., 115; 116 S. C., 392. *Agent bound to exercise good faith:* 21 R. C. L., 828, 829. *Where one holds himself out as agent and no agency exists he is personally liable for acts:* 46 S. C., 409. *Remedies where induced by misrepresentations to enter into fraudulent transactions:* 94 S. C., 314; 79 S. C., 205, 208; 20 Cyc., 87; 52 S. C., 244; 86 S. C., 576; 2 Bay, 11; 2 Rich., 40; 1 Strob., 396; 62 S. C., 52; 74 S. C., 202; 27 C. J., 12, 19, 29; 136 S. C., 496. *"Fraud":* 92 S. C., 393; 121 S. C., 429; 68 S. C., 506. *Action maintainable upon discovery of fraud:* Sec. 331, Code; 97 S. C., 126; 114 S. C., 130. *"Demurrer":* 124 S. C., 498; 50 S. C., 428; 226 U. S., 570; 42 S. C., 447; 108 S. C., 420; 111 S. C., 295. *Agency a question of fact for jury:* 114 S. C., 488; 112 S. C., 109.

August 30, 1927.

The opinion of the Court was delivered by Mr. Justice Carter.

This appeal is from an order of the Circuit Judge overruling a demurrer to the complaint. The action is one for damages for deceit, and has its basis in a certain contract which the plaintiff has pleaded as a part of its complaint.

The defendants demurred on the ground that the complaint does not state facts sufficient to constitute a cause of action, in that:

"(1) The complaint shows a valid contract was entered into for the sale of the land mentioned.

"(2) The complaint shows that the said contract was duly carried out, and that the plaintiff accepted the consideration and has not returned it.

"(3) That there are not facts alleged in the complaint which show any injury done the plaintiff by any fraudulent or willful representations of the defendants.

"(4) That the allegations of the complaint show that the plaintiff entered into a contract, and the same was duly carried out, and the plaintiff has received the benefits of the said contract which it now holds."

The appeal raises the same questions, and we shall dispose of them in order.

In our consideration of the matter it will be well to keep in mind the following legal principles: (1) That the demurrer admits as true allegations of fact in the complaint (*Citizens' Sav. Bank of Timmonsivlle v. Lynch,* 124 S. C., 498; 117 S. E., 715); (2) that a complaint, although it alleges contradictory matters, is not demurrable if it states a good cause of action (*Ross v. Charleston, M. & S. Transportation Co.,* 42 S. C., 447; 20 S. E., 285); (3) that a complaint is not demurrable if it states facts which would entitle the plaintiff to either legal or equitable relief (*Lancaster v. Southern Lfe Ins. Co.,* 89 S. C., 179; 71 S. E., 864. *Huffman v. Owings,* 108 S. C., 420; 95 S. E., 78).

While the Circuit Judge assigned no reasons for overruling the demurrer, we do not think that he rested his decision upon the ground first stated by the appellants. The respondent agrees with the appellants, and the complaint contemplates, that the contract entered into was a valid obligation and binding upon all the parties. But the validity of the con-

tract alone cannot avail the appellants.   The main and deciding question in the case appears to be, not whether the contract was valid and binding, but whether it was carried out according to its terms.   Hence the first ground of error advanced by the appellants is clearly without merit.

The next ground of imputed error presents, under the peculiar facts disclosed by the complaint and the contract, a more serious question.   Upon a reading of the complaint and the contract, does it appear, as contended by the appellants, that the contract was duly carried out?

Admitting the contract to be a valid one, the respondent alleges that the appellants failed to carry out its terms, in that, in providing a purchaser for the premises or a portion of same, they practiced a fraud upon the plaintiff; that, with intent to deceive and cheat the plaintiff out of its security, the appellants made a pretensive sale to one C. A. Perry, who was selected by them as a dummy in the transaction, paying him the sum of $250 in money for the fraudulent and deceitful service rendered by him in the sham and false and fictitious sale.

The appellants contend that the respondent received an amount of money and a mortgage of an acreage of land as security for the payment of the balance due it that constituted full compliance with the terms of the agreement.   But we think, as contended by the respondent, that under the contract, the plaintiff was entitled to, in addition to what it would receive in money and security, a *bona fide purchaser* of the property in question to be furnished by the appellants. Any other kind of sale would be a breach of that good faith upon which the respondent had a right to rely.

It is reasonable to suppose that a purchaser, who puts up his own money to the amount of $6,000 and gives a mortgage on the property for the balance of $24,000 owing thereon, would make an honest effort to pay the balance, in

order that he might not lose the $6,000 already invested. Such an incentive would be a valuable asset to the holder of the mortgage. The respondent was entitled to such an asset, and its absence, achieved, as alleged, through fraud and deceit, might result in injury to the respondent.

As to the contention of the appellants that no facts are alleged in the complaint which show any injury to the respondent by any fraudulent representation of the defendants, we may say that what we have already said in disposing of the second proposition applies here. As we. have seen, the respondent was entitled to a *bona fide* purchaser—one who would assume in good faith the obligations imposed upon him by the transaction. According to the complaint, the appellants, by their course of action, represented to the respondent that they. had made a *bona fide* sale of the land to a purchaser in good faith. This was a material representation and, if false, was a fraud on the respondent.

It is not to be doubted that if the appellants had furnished a *bona fide* purchaser who was acting in good faith, the respondent would not be heard to complain, although it might have afterwards turned out that the purchaser-mortgagor was unable to meet the obligations he assumed. But if the respondent had known that the purchaser, as alleged, was not acting in good faith, but was a "dummy" furnished by the appellants, it could not have been compelled to surrender its security by canceling the mortgage it held upon the entire tract of land. It could have, and doubtless would have refused to sanction or enter into, any transaction affecting its interests, the parties to which were not acting in good faith.

The appellants further contend that as the respondent 5, 6 has failed to return or tender back the consideration and benefits moving to it under the contract but now holds and enjoys same, it cannot maintain this action. We have made a careful examination of the authorities and are satisfied that this is a case in which the respondent may elect

to tender back the consideration and sue for rescission of the contract, or to retain the consideration, as it has done, and sue for damages sustained by reason of the fraud and deceit alleged to have been practiced upon it by the appellants. *Whittle v. Jones,* 79 S. C., 205; 60 S. E., 522.

While the truth of the allegations is a matter to be determined on the trial of the cause, for the purpose of a consideration of the demurrer, as herein stated, the demurrer admits as true allegations of fact in the complaint, and giving to the allegations of the complaint the liberal construction to which they are entitled on demurrer (*Owens v. Atlantic Coast Lumber Corporation,* 108 S. C., 258; 94 S. E., 15), we are satisfied that a cause of action is stated.

Let the. complaint, the contract, and the exceptions be reported.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN and STABLER concur.

MR. JUSTICE BLEASE did not participate.