0006

Victor J. BAEZA, Appellant, v. ROBERT E. LEE CHRYSLER, PLYMOUTH, DODGE, INC., International Investments Incorporated & Robert E. Lee, Individually, Respondent.

Court of Appeals

*Walter G. Newman,* of *Atkinson, Davis & Newman,* Sumter, *for appellant.*

*M. M. Weinberg, Jr.,* of *Weinberg, Brown & McDougall,* Sumter, *for respondent.*

Nov. 28, 1983.

BELL, Judge:

This is an action in tort for damages. The plaintiff, Victor J. Baeza, sued for fraud in the sale of a used truck. The defendants denied any fraud and defendant International Investments Incorporated, the assignee of the installment sales contract, counterclaimed for the unpaid balance of the purchase price. At the close of the evidence the trial judge granted directed verdicts for all defendants on Baeza's cause of action and for defendant International on the counterclaim. Baeza appealed. We affirm as to the counterclaim and reverse and remand for a new trial on the action for fraud.

On February 11, 1978, Baeza purchased from the defendant Robert E. Lee Chrysler, Plymouth, Dodge, Inc. (Dealer), an International Diesel truck with trailer. The contract price totalled $20,572.00, of which Baeza paid $10,572.00 down, leaving an unpaid balance of $10,000.00.

The parties signed two documents in connection with the sale, a "Buyers Order" and a "Retail Installment Contract." Both documents described the truck as a "1973 International" and listed the serial number as 259471G16605. It is undisputed that the truck had been wrecked, that the Dealer purchased it in a wrecked condition, and that the Dealer replaced the cab with a cab from a 1968 truck. The Dealer changed the serial number on the replacement cab to conform it to the serial number on the frame of the truck.

The Retail Installment Contract obligated Baeza to pay thirty-six monthly installments of $421.08 each and granted a security interest in the truck to the Dealer "or its assignee if this contract is assigned." The Contract was immediately assigned to International. International was organized and is owned by the personal defendant Robert E. Lee and Guy B. Louthian. Lee is the president and major stockholder of the

Dealer and also an officer of International. Louthian, the president of International, is also the general manager of the Dealer. Louthian admitted he was present during part of the conversation between Lee and Baeza the day the truck was sold. He also admitted he knew the truck was bought wrecked in 1975. The record does not indicate that International gave value for the assignment.

Baeza alleges that prior to the signing and delivery of the documents, Lee represented the truck to be a 1973 truck that had a recently overhauled Detroit engine, that was in good condition, and that had never been wrecked. These statements are alleged to have been false at the time they were made, known by Lee to be false, and made for the purpose of inducing Baeza to purchase the truck. Baeza claims he relied on these representations in entering the contract of sale. Baeza also alleges that Lee, on behalf of the Dealer, warranted the truck and the engine for 50,000 miles at the time of sale.

The defendants deny any fraud but admit that the cab and serial number were changed. They allege that prior to the sale Baeza was told the truck had been wrecked. They claim that all the facts were brought to Baeza's attention "in great detail" and that the purchase price of the truck was adjusted accordingly.

Within a few months after the purchase, Baeza began having problems with the truck. He had breakdowns in Savannah and Tampa. Repairs were done on the truck, in part by the Dealer and in part by others. Baeza testified that he continued to have trouble with the truck over the next year. He also testified he discovered the cab was not a 1973 model when he ordered parts by the serial number on the truck and received parts that would not fit a 1973 model. According to Baeza, he repeatedly contacted Lee and Louthian in an attempt to get the truck repaired and to obtain reimbursement for repairs.

It is undisputed that after paying a total of $4,159.92 in installments to International, Baeza ceased payments on the Retail Installment Contract in January 1979. There is testimony that the unpaid balance on the Contract is $10,998.88, principal and interest. It is also undisputed that Baeza retained possession of the truck and trailer and has refused demands by International for repossession under the security agreement.

On these facts the trial judge granted the defendants' motion for a directed verdict on Baeza's fraud claim. He found that after discovering the alleged fraud Baeza "continued to receive the benefits of the contract from March of 1978 up until he brought this action and even today." He held that Baeza thereby "waived" the alleged fraud as a matter of law.

The defendants maintain the trial judge ruled correctly, because once Baeza limited himself to recovery on a theory of fraudulent inducement of a contract, "he was then bound to repudiate the contract, redeliver the benefits received thereunder and seek recovery. . . ." By retaining possession of the truck and trailer, they contend, Baeza lost his right to sue.

A similar argument was made in *Bank of Johnston v. Jones*, 141 S. C. 98, 139 S. E. 190 (1927). The Supreme Court, per Carter, J., held that return of the benefits received under the contract was not necessary in a suit for fraud. In *Liquid Carbonic Co. v. Coclin*, 161 S. C. 40, 159 S. E. 461 (1931), the Court likewise held that retention of the goods and continued partial payments on a contract of sale was not waiver as a matter of law.

As a general rule, a party induced to enter a contract by ▮ fraud has a choice among causes of action and remedies. If the fraud gives rise to a breach of promise or warranty, he may elect to sue in contract or in tort. *Houston v. Gilbert*, 5 S.C.L. (3 Brev.) 63 (1812). If he sues in contract, he may seek his expectancy damages under the contract or rescission and restitution of the contract price. *Ebner v. Haverty Furniture Company*, 128 S. C. 151, 122 S. E. 578 (1924). At common law, a party seeking rescission of an executed contract and return of his money must be able to return or tender the benefits he received under the contract. *Id.*[1]

In this case, Baeza elected to sue in tort rather than ▮▮ contract. A plaintiff suing in tort may, despite the fraud, elect to affirm the contract, retain the benefits

---

[1] The Uniform Commercial Code modifies the common law rule. The U.C.C. allows the buyer to rescind a contract for sale of goods and retain the goods already in his possession as security for restitution of the purchase price and incidental expenses. See, § 36-2-711, Code of Laws of South Carolina, 1976. This rule applies to rescission both for fraudulent and for nonfraudulent breach. See, § 36-2-721, Code of Laws of South Carolina, 1976. Baeza's counsel argued strenuously that the U.C.C. rule should apply to this case. The rule is, of course, not applicable, as Baeza has not elected to rescind.

received under it, and bring an action for deceit to recover damages sustained by reason of the fraud. Alternatively, he may elect to rescind the contract and recover the consideration paid plus incidental damages which were foreseeable and were incurred in reliance on the fraudulent misrepresentation. *Turner v. Carey*, 227 S. C. 298, 87 S. E. (2d) 871 (1955); *Gilbert v. Mid-South Machinery Co., Inc.*, 267 S. C. 211, 227 S. E. (2d) 189 (1976). If he elects to affirm the contract and seek damages for the fraud, the measure of general damages is the difference between the value the plaintiff would have received if the facts had been as represented and the value he actually received. He is also entitled to recover any special or consequential loss which is the natural and proximate result of the fraud. *Lawson v. Citizens and Southern National Bank of South Carolina*, 255 S. C. 517, 180 S. E. (2d) 206 (1971).

When facts entitle a party to alternative remedies, those remedies are not considered inconsistent, and he may plead and prove his entitlement to either or both, even though he may not recover both. *McMahan v. McMahon*, 122, S. C. 336, 115 S. E. 293 (1933). This rule rests on the principle that the plaintiff should have a full opportunity to prove his claim to some form of relief, but he should not receive a double recovery.

At trial, there was confusion about the remedy Baeza was seeking. In his pleadings, he prayed for actual and punitive damages for the alleged fraud and also sought "cancellation" of his remaining payments to International under the Retail Installment Contract. This might have been construed as a plea of alternative and inconsistent remedies. But it is plain on the face of the complaint that Baeza did not seek rescission of the sale or a return of his down payment and the installments already paid. Baeza had affirmed the transaction and was seeking damages for the fraud. This he was permitted to do. The prayer for "cancellation" of the unpaid installments should have been treated as a claim to offset his damages in fraud against the unpaid balance on the Retail Installment Contract, not as a disaffirmance of the sale.[2] If he proved his damages, he was entitled to offset them against the

[2] At trial, defense counsel repeatedly characterized Baeza's suit in fraud as an election to rescind the contract, despite persistent statements by Baeza's attorney that he had not elected, and was not seeking, rescission.

unpaid balance of the purchase price. *Turner v. Carey*, 227 S. C. 298, 87 S. E. (2d) 871 (1955).

Having elected to affirm the transaction, Baeza was obligated to perform his side of the bargain. By failing to make any payments on the installment contract after January, 1979, he defaulted on his obligation. As assignee of the contract, International was entitled to recover the unpaid balance due. Thus, the trial judge properly granted a directed verdict on the counterclaim.

Had the jury entered a verdict for Baeza on the fraud claim, he would have been entitled to offset his damages against International's claim. The Retail Installment Contract was not a negotiable instrument. As assignee of the contract, International took subject to Baeza's claims against the Dealer. *First National Bank of South Carolina v. Wade*, 245 S. C. 426, 141 S. E. (2d) 102 (1965); *Bank of Commerce of Charlotte v. Waters*, 215 S. C. 543, 56 S. E. (2d) 350 (1949).[3]

Since the erroneous direction of a verdict deprived Baeza of his right to go to the jury on the issue of fraud, the case must be remanded for a new trial on the fraud claim. If the jury finds for the defendants, judgment should be entered for International in the amount due on the contract. If the jury finds for Baeza, the trial court should offset Baeza's damages against International's claim and enter judgment for the balance in favor of the appropriate party.

Affirmed in part; reversed in part and remanded for new trial.

SANDERS, C. J., and GARDNER, J., concur.

---

[3] There was considerable evidence that International was not a stranger to the contract. International apparently gave no value for the assignment. International's president, Louthian, was present during part of the conversations leading to the sale, he was the general manager of the Dealer, and he knew prior to the sale that the truck had been wrecked.