## TILLINGHAST v. BOSTON, &c., COMPANY.

## MOORE v. S. C. FORSAITH COMPANY.

1. SUPREME COURT—FACTS IN LAW CASE.—Facts found by the Circuit Judge in a law case on a motion to set aside the service of the summons and to dismiss the complaint for want of jurisdiction, cannot be considered on appeal.

2. CONTRACTS—PLACE—CAUSE OF ACTION.—In the absence of any statement to the contrary, the place where a contract is made is presumably the place of its performance, and the cause of action arises at the place where it is to be performed.

3. ATTORNEY AND CLIENT.—The attorney of record in a pending action has no authority by reason of such relation to bind his client to the payment of a fee to the attorney of the other party, on the settlement of the case.

4. CONTRACT—PLACE OF PERFORMANCE.—A telegram and a letter sent from Boston to this State, if containing a promise to pay money to a citizen in this State, but saying nothing as to the place of payment, make a contract which is to be performed in Boston.

5. IBID.—CAUSE OF ACTION.—The breach of a contract, and not the contract itself, constitutes the cause of action.

6. FOREIGN CORPORATION—ACTION—CASE CRITICISED.—Where a foreign corporation is sued in this State on a contract made in another State, and there breached, and order of publication here obtained, followed by personal service at the home of the defendant, but no attachment issued, the court in this State did not by such service acquire jurisdiction of the defendant.   Pennoyer *v.* Neff, 95 U. S., 714, followed. [1]

---

[1] See note to Moyer *v.* Bucks, 16 L. R. A., 231.

7. IBID.—SERVICE—ATTACHMENTS.—The provisions of the Code of Procedure relating to the service of summons on foreign corporations apply only to cases in which there is a proceeding *in rem.*, as, *e. g.*, a warrant of attachment.

8. IBID.—IBID.—IBID.—ACTION.—These rules as to service on a foreign corporation apply as well to cases in which the contract was made and breached in this State.

9. CASE CRITICISED.—This same case, as decided in 38 S. C., 319, reaffirmed.

Before HUDSON, J., Hampton, October, 1892.

These were two actions heard together—W. S. Tillinghast against the Boston and Port Royal Lumber Company and the S. C. Forsaith Machine Company, and James W. Moore against the S. C. Forsaith Machine Company. For former report, see 38 S. C., 319. The letter referred to in the opinion was as follows:

MANCHESTER, N. H., 5–5, '92.

*W. S. Tillinghast, Esq., Hampton C. H., S. C.*

DEAR SIR: In accordance with our promise by wire, we write you concerning the subject of your telegram to us on the 27th, reporting that Mr. Mitchell has returned and given us a statement of affairs at Almeda. We are not clear from him as to your claims, nor is there anything in your message to make same clear, and we ask you to have the kindness to advise us fully what you do claim from this company, and what you claim from the Boston and Port Royal Lumber Company, as we are willing to pay anything that is just therein.

But as we understood a reference was to be made, as agreed upon by both parties, as to what would be proper in the amount of fees, but this does not appear to materialize; will you have the kindness, therefore, to give us fully a statement of your claims, and they shall have prompt attention upon our part.

Yours respectfully,                    W. E. DREW, *Agent.*

*Messrs. C. J. C. Hutson* and *L. F. Youmans*, for appellant.

*Mr. Jeff Warren*, contra.

November 3, 1893. The opinion of the court was delivered by MR. CHIEF JUSTICE MCIVER. These two cases were origi-

nally heard and considered · together by this court during
November term, 1892, and on the 21st of February, 1893, this
court filed its opinion, affirming the orders appealed from, as
may be seen by reference to 38 S. C., 319. Subsequently the
appellants filed petitions for rehearing, which were granted
(38 S. C., 324), and the cases were reheard during the present
term of this court. As we still think there are some differences
in the facts of the two cases, notwithstanding the opinion of
counsel to the contrary, we are of opinion that it will be better
to consider the cases separately.

In the Tillinghast case, it appears that on the 7th of May,
1892, the plaintiff issued a summons against the two companies
named as defendants herein, calling on them to answer the
complaint dated and, we suppose, filed on the same day. In
that complaint, the plaintiff alleges that he is an attorney at
law, practicing in the courts of this State; that as such he had
previously instituted an action in the name of one W. R.
Smith against the Boston and Port Royal Lumber Company,
alleging insolvency of said company, waste of assets, and asking
that a receiver be appointed to take charge of said company's
property for the protection of the rights of creditors and share-
holders of said company; that he applied for and obtained an
order for the appointment of a temporary receiver, who took
charge of said assets; that prior to the day agreed upon for
the hearing of the motion for the appointment of a permanent
receiver, all the parties interested, either as shareholders or
creditors of said Boston and Port Royal Lumber Company, met
in the city of Boston, and settled their conflicting claims and
interests; that as soon as the said adjustment was made, all
parties being desirous that the proceedings for the appointment
of a receiver should be discontinued, a telegram was sent by
the S. C. Forsaith Machine Company, one of the defendants in
the receiver case, that they would be responsible for the ex-
penses of said case, which expenses included plaintiff's fee in
said case, which expenses were to be ascertained by a reference;
that on receipt of said telegram, an agreement, in writing, was
entered into between the plaintiff herein, the said W. R. Smith,
plaintiff in the receiver case, and E. F. Warren, Esq., attorney

for both of the defendants herein, a copy of which is exhibited as a part of the complaint; that upon the delivery of said agreement to the plaintiff herein, he took an order, discontinuing the receiver case, whereupon the assets of the Boston and Port Royal Lumber Company were surrendered by the temporary receiver; that the plaintiff herein, without success, attempted to have the reference contemplated by said agreement, and finally one Hiram Mitchell, who came here as agent, and was the agent of the S. C. Forsaith Machine Company, refused to have the reference, and left the county, returning to New Hampshire; that the Boston and Port Royal Lumber Company is a foreign corporation, created under the laws of the State of Maine, and doing business and owns real and personal property in Hampton County, S. C.; that the S. C. Forsaith Machine Company is a foreign corporation, created under the laws of the State of New Hampshire, and owning an interest in the stock or property aforesaid of the Boston and Port Royal Lumber Company, in Hampton County aforesaid; that plaintiff is a resident of South Carolina, and the contract for the payment of his fee as aforesaid arose and was made in Hampton County, S. C. And after other allegations as to the value of his professsonal services, the plaintiff demanded judgment for the same.

The following is a copy of the telegram referred to in the complaint: "Boston, Mass., April 9, 1892. To E. F. Warren, Hampton, S. C.: Discontinue all suits against lumber company and get the matter out of court, and we will be responsible for cost, to be ascertained by reference, as the lumber company will resume business. S. C. Forsaith Machine Company, Manchester, N. H." And the following is a copy of the agreement entered into after receipt of said telegram:

"THE STATE OF SOUTH CAROLINA, ⎱ *In Common Pleas.*
   County of Hampton.                   ⎰

"W. R. Smith, plaintiff, *v.* The Boston and Port Royal Lumber Co. Whereas all parties interested in above case have agreed to a settlement thereof; and whereas the S. C. Forsaith Machine Company, of Manchester, N. H., has agreed to pay W. S. Tillinghast, plaintiff's attorney, his fee herein (it being

conceded by all parties hereto that such fee is to be paid, under the law, out of the general assets of the Boston and Port Royal Lumber Company), such fee to be ascertained by a reference; and whereas it is agreed that the Boston and Port Royal Lumber Company will protect W. R. Smith in his interest as the same may appear. In consideration of the foregoing, the above entitled cause is to be withdrawn. It is further agreed that said reference to ascertain the amounts of said fees and costs will be held within next week before          if said fees and costs cannot be adjusted without such reference. (Signed) W. S. Tillinghast, plaintiff's attorney. E. F. Warren, defendant's attorney. W. R. Smith."

On the 5th of July, 1892, upon the usual affidavit of the plaintiff, an order of publication was granted by the clerk of the Court of Common Pleas for Hampton County, S. C., requiring publication to be made in the Manchester Daily Mirror, a newspaper published in the city of Manchester, State of New Hampshire, once a week for six successive weeks, and that a copy of the summons and complaint be forthwith deposited in the post office in Hampton, addressed to the S. C. Forsaith Machine Company, Manchester, N. H. Such communication appears to have been sent by registered letter on the 8th of July, 1892; but it does not appear that any publication was ever made; the plaintiff relying upon service of the defendant company, in New Hampshire, in lieu thereof, as appears by the affidavit (a copy of which is set out in the "Case") of one Daniel T. Healey, sheriff of the county in which the city of Manchester is located, made before one Thomas D. Luce, styling himself "Clerk Supreme Court" of said county, and certified to by him under his "hand and official seal," though no copy of such seal is affixed. It may be as well to state here that the action was dismissed as to the Boston and Port Royal Lumber Company, upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and there being no appeal from the order entered to that effect, the case should now be considered as an action against the S. C. Forsaith Machine Company alone.

Upon the papers above set forth and referred to, a motion

was made before his honor, Judge Hudson, to set aside service of summons and complaint on the said defendant, made at their place of business, in the city of Manchester, State of New Hampshire, and to dismiss the complaint of plaintiff for want of jurisdiction, whereupon the following order was granted: "On hearing the pleadings in above stated case, and on motion of Jeff. Warren, attorney for the S. C. Forsaith Company, defendant, to set aside service of summons and complaint on the said defendant, made at their place of business in the city of Manchester, State of New Hampshire, and to dismiss the complaint of plaintiff for want of jurisdiction, counsel having been heard, it appearing to the satisfaction of this court that the defendant, S. C. Forsaith Machine Company, are a foreign corporation and non-residents of this State; that they have no property within the limits of this State, are represented by no agent and have no place of business therein; that the cause of action, to wit: the breach of the contract, did not arise within the limits of this State, and that service of summons and complaint was made in the city of Manchester, State of New Hampshire; ordered, that the complaint of plaintiff be dismissed, this court having no jurisdiction on the grounds above set forth." Subsequently the judge filed a paper setting forth more fully his reasons, a copy of which may be found in the former report of the case, in 38 S. C., 319, and which, therefore, need not be set out here.

From this order plaintiff appeals upon the three grounds set out in the record, which make substantially three questions: 1st. Was there error in holding that the cause of action did not arise in this State? 2d. Was there error in holding that the breach of the contract constituted the cause of action? 3d. Was there error in holding that, even if the cause of action arose in this State, the courts of this State could not take jurisdiction of an action *in personam* and render a personal judgment against a party served with the summons outside of the limits of this State?

To determine the first question, two inquiries present themselves: First. When was the contract made? Second. Where was it to be performed? These inquiries involve mixed

41—39

questions of law and fact; and, so far as the latter are concerned, the finding of the Circuit Judge is conclusive in a case of this kind. *Hester* v. *Raisin Fertilizer Co.*, 33 S. C., 609. But the rule of law is that, "in the absence of anything indicating the contrary, the place of the making of a contract is presumably that of its performance," as was said by Mr. Justice McGowan, in *Curnow* v. *Phœnix Insurance Company*, 37 S. C., 411, quoting with approval from Bish. Cont., sec. 1391; and as was held in *Rodgers* v. *Endowment Association*, 17 S. C., 410, the cause of action on a contract arises at the place where it is to be performed. Where, then, was the contract made, upon which the plaintiff bases his action, if, indeed, there was any such contract, a point which is not now before us, and upon which we do not desire to be regarded as even intimating any opinion. It does not appear that the plaintiff ever before had any professional connection with the S. C. Forsaith Machine Company, and if made at all, it must be traceable to the telegram copied above; and that was sent from Boston, Mass. We cannot regard the written agreement between Tillinghast, Warren and Smith, set out above, as any evidence of any contract on the part of the defendant company to pay anything. The fact that Mr. Warren was attorney for that company in a litigation then pending, could not invest him with authority to bind his client to pay money, without some authority other than that arising from his professional relations; and certainly the terms of the telegram conferred no authority to enter into such agreement. Indeed, the terms of that paper do not show that Mr. Warren undertook to bind his client to pay any sum of money whatever. On the contrary, the agreement contained nothing more than a recital of the fact that the defendant company had agreed to pay the fee of Mr. Tillinghast; and whether that recital was strictly correct or not, is not a question now to be considered.

If, therefore, there was any agreement on the part of the defendant company to pay the plaintiff's fee, it must be found in the telegram above referred to, and if it contains any promise to that effect, such promise was not made in

this State, but in Boston, and, under the rule above referred to, must be there performed, as it is quite clear that there is nothing in the telegram indicating the contrary. Appellant in his argument seems to rely somewhat upon a letter, printed in the "Case," from the agent of the defendant company to Mr. Tillinghast, as tending to show that defendant acquiesced in the arrangement for the payment of plaintiff's fee. But as we did not consider that the terms of that letter indicated any such acquiescence, we did not deem it important to set out that letter in making our statement of the case. Still, we would be glad to have the letter incorporated in the report of the case, in deference to the views of its importance by appellant's counsel. But even if that letter contained a positive promise to pay the fee, or a direct admission of defendant's liability, such promise, whether express or implied, was not made in this State, but in the State of New Hampshire; and hence, under the rule above stated, the cause of action could not be regarded as arising in this State, as there is nothing in the letter indicating that such supposed promise was to be performed elsewhere.

As to the second question presented by the grounds of appeal, we deem it only necessary to say that we cannot understand how any contract can give rise to a cause of action until there has been some breach of such contract. The mere fact that a person has entered into a contract with another can give no cause of action, and none can arise until there is some breach of such contract, which, therefore, must be regarded as the cause of action. The contract may give a party the right to demand its performance according to its terms, but there is no delict and no cause of action until the other party refuses or neglects to perform some duty required of him by the terms of the contract. We do not think, therefore, that there was any error on the part of the Circuit Judge in holding that the breach of the contract constitutes the cause of action.

The third question presented by the grounds of appeal is more difficult and is much more important than either of the other questions. The Code provides in section 148, that "civil

actions in the courts of record of this State shall be commenced
by service of a summons," and in subsequent sections, 155 and
156, proceeds to prescribe how such service shall be made.    In
section 155 the provision is, that if the action be against a cor-
poration, it must be by delivery of a copy of the summons to
certain officers or agents of the corporation, "but such ser-
vice can be made in respect to a foreign corporation only when
it has property within this State, or the cause of action arose
therein, or where such service shall be made within this State
personally upon the president, cashier, treasurer, attorney or
secretary thereof," followed by a special provision as to certain
specified corporations, which have no application to the pre-
sent case, as the defendant here is not one of the corporations
specified.    In section 156, provision is made for the service of
the summons by publication in certain specified cases, the only
one of which applicable here is couched in the following lan-
guage: "Where the defendant is a foreign corporation, has
property within the State, or the cause of action arose therein."
That section contains this further provision: "Where publica-
tion is ordered, personal service of the summons out of the
State is equivalent to publication," &c.    Section 158 provides
that in the cases mentioned in section 156, the service of the
summons shall be deemed complete at the expiration of the
time prescribed by the order for publication.    Section 159 pro-
vides how proof of the service of the summons shall be made,
and contains this language: "When the service is made out of
the State, after order of publication, the affidavit of the person
making the service shall be made before the clerk of any court
of record in the State or district in which such service shall be
made, who shall certify the same under his official seal," which
was afterwards amended by the act of 1884 (18 Stat., 745), so
as to include other officers besides such clerk.    Section 160
provides that: "From the time of the service of the summons
in a civil action, or the allowance of a provisional remedy, the
court is deemed to have acquired jurisdiction."

It must be admitted that, if we look alone to the provisions
of the several sections of the Code above referred to, there is
strong ground for the position taken by appellant, that,

if the cause of action arose in this State, the court had acquired jurisdiction of the defendant corporation. For in view of the findings of Judge Hudson, that the defendant was a foreign corporation, having no property within this State, that it was duly served with a copy of the summons in the State of New Hampshire, after order of publication had been made, we must take the facts so found, and there is no room for the objection, taken in the argument, to the proof of service as lacking the official seal of the clerk, as no such exception was taken below. So that the naked question now presented is, that even assuming that the cause of action in this case arose in this State, whether the courts of this State could acquire jurisdiction of this foreign corporation, which had no property in this State, through which it might have been reached by a proceeding *in rem*, at least so far as such property was concerned, simply by personal service on such corporation in another State.

This question, as it seems to us, has been conclusively settled in the negative by the highest authority in the case of *Pennoyer* v. *Neff*, 95 U. S., 714. In that case, Neff, being a non-resident of the State of Oregon, but owning property therein, the land in question, was sued on a money demand, in which action the State Court of Oregon undertook to acquire jurisdiction of the person of Neff by publication, under a statute of that State practically identical with our Code in this respect, and rendered judgment against him for the amount of such demand, and under the executions issued to enforce such judgment, the land was sold by the sheriff and bought by Pennoyer. Subsequently, an action was brought by Neff against Pennoyer, to recover possession of the land, in the Circuit Court of the United States for the District of Oregon, and carried thence by writ of error to the Supreme Court of the United States. The case turned upon the validity of the sale by the sheriff, or rather the validity of the judgment under which such sale was made, and the court held that the State Court of Oregon could not acquire jurisdiction of the person of a non-resident defendant in a personal action simply by service by publication, and hence that the judgment was a nullity. As is said by Mr. Jus-

tice Field, in delivering the opinion of the court, one of the well established principles of public law, respecting the jurisdiction of an independent State over persons and property, is: "That no State can exercise direct jurisdiction and authority over persons or property without its territory. Story Confl. Laws, ch. 2; Wheat. Int. Law, pt. 2, c. 2. The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others, and so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territory, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory, so as to subject either persons or property to its decisions."

This doctrine does not deny or interfere with the right of a State to acquire jurisdiction over the property of a non-resident *located* or found *within such State* by a proceeding *in rem*, for example, by attachment, or some proceeding in the nature of a proceeding *in rem*, provided for by the laws of such State; but under such a proceeding, no *personal* judgment can be rendered against the non-resident, and the judgment can only affect him so far as his property found in the State is concerned. See *Stanley* v. *Stanley*, 35 S. C., 94. The same doctrine had been previously laid down in *Galpin* v. *Page*, 18 Wall., at pages 367–8, where it is said: "Even the Court of King's Bench in England, though a court of general jurisdiction, never imagined that it could serve process in Scotland, Ireland or the colonies to compel an appearance, or justify a judgment against persons residing therein at the time of the commencement of the suit." The case of *Pennoyer* v. *Neff* has not only been recognized and followed in numerous subsequent cases, but, so far as we are informed, has never been questioned by any tribunal. Even the learned judge, Mr. Justice Hunt, who dissented in that case, did not question the doctrine for which we have cited the case, but based his dissent upon the sole ground that, inasmuch as Neff owned land within the State of Oregon at the time the action was commenced, in which the judgment in question was recovered, it could be subjected to such judgment even though no proceeding by attachment had been instituted.

It is true, that in that case the defendant was a natural person, and not, as here, a corporation, and that the service there was by publication, and not, as here, by personal service outside of the limits of the State.  But neither of these circumstances can make any substantial difference between that case and this; for in the case of *St. Clair* v. *Cox*, 106 U. S., 350, the doctrine of *Pennoyer* v. *Neff* was applied to a case of a foreign corporation, and it is there said: "The doctrine of that case applies, in all its force, to personal judgments of State Courts against foreign corporations;" and we are unable to discover any reason why it should be otherwise.  See, also, *Mexican Central Railway* v. *Pinkney*, 149 U. S., 194, where the same doctrine was applied in a case of a foreign corporation.  The other point of difference amounts to nothing, for the statute of Oregon, like our statute, expressly declares: "Where publication is ordered, personal service of the summons out of the State is equivalent to publication and deposit in the post office," thus putting the two modes of service precisely upon the same footing.  Besides, in the case of *Sugg* v. *Thornton*, 132 U. S., 524, where the doctrine of *Pennoyer* v. *Neff* was applied, the case shows that the party who objected to the jurisdiction of the Texas Court, on the ground that there had been no legal service upon him, was actually served in Wyoming Territory.

It is apparent from what is said in other cases that the Supreme Court of the United States recognize no difference in the two modes of service, so far as the question we are considering is concerned.  For in *Grover, &c., Machine Company* v. *Radcliffe*, 137 U. S., at pages 294–5, it is said, upon the authority of *Pennoyer* v. *Neff*, and other cases there cited, "that a personal judgment is without validity if rendered by a State Court, in an action upon a money demand against a non-resident of the State, upon whom no personal service of process within the State was made, and who did not appear."  And in *Wilson* v. *Seligman*, 144 U. S., at pages 44–5, the following passages from the opinion in *Pennoyer* v. *Neff* are quoted with approval: "Every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory  *  *  *  no State can exercise direct jurisdiction and authority over per-

sons or property without its territory  *  *  *  it is in virtue
of the State's jurisdiction over the property of the non-resident,
situated within its limits, that its tribunals can inquire into
that non-resident's obligations to its own citizens, and the in-
quiry can then be carried only to the extent necessary to con-
trol the disposition of the property.  *  *  *  Where the en-
tire object of the action is to determine the personal rights and
obligations of the defendants, that is, where the suit is merely
*in personam*, constructive service in this form upon a non-resi-
dent is ineffectual for any purpose.   Process from the tribunals
of one State cannot run into another State, and summon par-
ties there domiciled to leave its territory, and respond to pro-
ceedings against them.  *  *  *  Process sent to him out of
the State, and process published within it, are equally una-
vailing in proceeding to establish his personal liability  *  *  *
A judgment which can be treated, in any State of this Union,
as contrary to the first principles of justice, and as an absolute
nullity, because rendered without any jurisdiction of the tri-
bunal over the party, is not entitled to any respect in the State
where rendered.  *  *  *  To give such proceedings any va-
lidity, there must be a tribunal competent by its constitution,
that is, by the law of its creation, to pass upon the subject mat-
ter of the suit; and if that involves merely a determination of
the personal liability of the defendant, he must be brought
within its jurisdiction by service of process within the State,
or his voluntary appearance.''

These being the well settled principles, applicable to a case
like the one now under consideration, established by the
Supreme Court of the United States, a tribunal which
is invested with final jurisdiction in controversies be-
tween citizens of different States, it seems to us that we
are bound, if practicable, to put such a construction upon the
provisions of our Code, above referred to, as will bring it into
conformity with such principles.   This, we think, can be done
by construing the above mentioned provisions of our Code as
applying only to cases in which a warrant of attachment has
been issued, or to some other proceeding *in rem*, or in the
nature of a proceeding *in rem*, and not to cases of mere personal

actions, in which only a personal judgment can be obtained. For it must be remembered that an action cannot now, as formerly, be commenced by a writ of foreign attachment; but that now, under the Code, an attachment is merely a provisional remedy in aid of an action, and hence, to make it available, an action must be commenced in regular form, and judgment therein must be recovered before the attachment can yield the fruits which it is designed to produce. We are, therefore, compelled to construe the provisions of the Code above referred to, providing for the mode of making a non-resident a party to an action, as applying only to such actions as may be regarded as a proceeding *in rem*, and not applying to merely personal actions, in which only a personal judgment is sought or can be obtained.

This being a purely personal action, in which no warrant of attachment has been, or could be, obtained, inasmuch as the defendant has no property within this State, we think that the court never acquired jurisdiction of the defendant corporation, by service of the summons out of the State, and hence there was no error on the part of the Circuit Judge in dismissing the complaint for want of jurisdiction.

The second case mentioned in the title of this opinion, that of Mr. Moore, differs in at least one very material respect from the case just considered. Here the undisputed evidence is that the contract, which constitutes the basis of plaintiff's action, was made in this State, by a duly authorized agent of the defendant corporation, and subsequently ratified by the general agent of said corporation; and as there is nothing even tending to show that such contract was to be performed elsewhere, it must, under the rule announced in Mr. Tillinghast's case, be regarded as a contract made and to be performed in this State, and hence that the cause of action arose in this State. If this were all, then a different conclusion from that reached in the case first considered would follow. But, under the views which we have taken of the third question presented by the appeal of Mr. Tillinghast, we are compelled to conclude that the court never acquired jurisdiction of the defendant corporation by a simple service of the summons in the State of

New Hampshire; for in this case, as in the former, there was no warrant of attachment obtained, and none could have been, by reason of the undisputed fact that defendant, though a foreign corporation, had no property within the limits of this State. There was, therefore, no error on the part of the Circuit Judge in dismissing the complaint in this case for want of jurisdiction.

For the reasons hereinbefore stated, we must adhere to the judgment rendered at the former hearing. The judgment of this court is, that the judgment of the Circuit Court, in each of the cases stated in the title of this opinion, be reaffirmed.