1201

The FIRST FEDERAL SAVINGS BANK, Respondent v. Donald R. KNAUSS and Southern Bank & Trust Company, Defendants, of whom Donald R. Knauss is Appellant.

(370 S. E. (2d) 906)

Court of Appeals

*George E. Mullen,* of *McKay & Mullen,* Hilton Head Island, *for appellant.*

*Russell P. Patterson,* of *Jones, Scheider & Patterson,* Hilton Head Island, *for respondent.*

Heard June 20, 1988.

Decided Aug. 1, 1988.

CURETON, Judge:

First Federal Savings Bank filed complaints to foreclose mortgages on five pieces of property in Beaufort County. All of the properties were owned by Donald Knauss. First Federal expressly reserved its right to seek deficiency judg-

ments against Knauss in its pleadings. Knauss claimed no deficiencies should be allowed because First Federal procured the appraisals which he relied on in purchasing the properties and "the bank was neglectful in appraising" the properties or in "obtaining adequate security for the loan(s)." Such actions by the bank he claims should act as a bar to the deficiency judgments. A special referee agreed with Knauss and recommended that he have a setoff of One Hundred Twenty Thousand ($120,000) Dollars in the event deficiencies should result after the foreclosure sale. First Federal filed exceptions to the report of the special referee. The trial court rejected his recommendations. The trial court ordered the lots sold and held First Federal would have judgment against Knauss in the amount of any deficiency. Knauss appeals the decision of the circuit court. We affirm.

This Court may make factual findings in accordance with its own view of the preponderance of the evidence in an equity action where the special referee is in disagreement with the trial court on a factual finding. *Townes Associates Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976). An action to foreclose a mortgage is an action in equity. *Pee Dee State Bank v. Prosser*, 295 S. C. 229, 367 S. E. (2d) 708 (Ct. App. 1988).

I.

In March 1984, Knauss executed a series of promissory notes and mortgages in favor of Gulfstream Mortgage Company.[1] Each note was for Sixty-Four Thousand ($64,000) Dollars and was secured by one of five lots in the "Calibogue Square Subdivision." The notes and mortgages were assigned by Gulfstream to First Federal Savings Bank. At the time Gulfstream made the loans to Knauss, First Federal had already agreed to purchase the obligations.

The controversy arises from appraisals of the lots which estimated the market value of each lot in December 1983 as Eighty Thousand ($80,000) Dollars. The written appraisals contained the following language:

---

[1] Apparently, Gulfstream acted as agent of First Federal in processing the loan.

The reader is reminded that the SUBJECT PROPERTY is part of a residential-resort project which is still in the very early stages of development. The estimated market value given above is partially predicated on the assumption that all aspects of the project will be approved by the various regulatory agencies, that the off-site improvements (i.e., paved roads) will be properly constructed and/or installed etc.

After the notes were in default, another appraisal was performed by a different appraiser. In March of 1986 this appraiser gave a retail market value of Forty Thousand ($40,000) Dollars per lot noting the lots were not developed.

Knauss does not claim the notes are not in default but argues the land should serve as the only source of recovery for First Federal. He claims First Federal obtained the 1983 appraisals and he relied to his detriment on them in purchasing the properties. He alleges the bank was neglectful in appraising the properties because the appraisals were based upon the assumption improvements would be made to the properties. The special referee found Knauss did not supply or obtain the appraisals, but they were obtained by Ron Harley, a business associate of Knauss, and were given to the bank to satisfy its loan requirements. The referee concluded the bank "adopted" the appraisals as its own and there was no other reasonable explanation for the bank agreeing to make the loans. The referee concluded the bank was negligent in utilizing the appraisals in making the loans because there were conditions precedent to establishing the $80,000 values of the lots. In reaching his recommendation the special referee cited authorities relied upon by Knauss concerning what the parties have characterized as the de- fense of "negligent appraisal."

The trial court held the courts of this state have not recognized a "negligent appraisal" defense in a mortgage foreclosure action and declined to recognize it in this case. The circuit court further held that even if it were to recognize the defense, the facts did not establish the defense.

## II.

Knauss relies upon the authority of *Larsen v. United Federal Savings and Loan Association of Des Moines*, 300 N. W. (2d) 281 (Iowa, 1981). In *Larsen*, home purchasers sued United Federal in negligence alleging they paid an excessive price for a home based upon a negligent appraisal performed by an employee of United Federal. There was evidence the purchasers paid a fee to United Federal for the appraisal and relied upon the results in purchasing the property. United Federal notified the Larsens the appraisal was okay. They then completed the loan and purchased the home. There was lay and expert testimony establishing the appraisal was negligently performed and the appraised value should have been less because the appraisal failed to take into account structural defects. As to the duty element of the negligence claim, the Iowa Supreme Court referred to the concept of negligent misrepresentation in the *Restatement (Second) of Torts* Section 552 (1977). The court determined the Larsens were within the group of people who would be expected to receive and rely on the information. The court refused to accept United Federal's argument that its role as lender should be separated from the role its own employee played as appraiser. The court found "there [was] no good reason not to recognize itself as the paid supplier of the information, making the appraisal through its own employee and then furnishing the results to the Larsens for their guidance in the real estate loan purchase transactions." *Larsen*, 300 N. W. (2d) at 287; *see Anno.* 21 A.L.R. 4th 867 (1983).

The concept of negligent misrepresentation as described in Restatement (Second) of Torts is not new to South Carolina. This court recognized the existence of a duty to exercise due care in giving information when the defendant had a pecuniary interest in the transaction. *Winburn v. Insurance Company of North America*, 287 S. C. 435, 339 S. E. (2d) 142 (Ct. App. 1985). The South Carolina Supreme Court has recognized consultants may be liable in negligence to non-contracting parties who have reasonably relied upon their reports in taking action. *South Carolina State Ports Authority v. Booz-Allen & Hamilton Inc.*, 289 S. C. 373, 346 S. E. (2d) 324 (1986).

The facts of this case do not establish negligent misrepresentation or "negligent appraisal" by First Federal. The evidence indicates the appraisals were performed by an outside appraiser, not an employee of First Federal as was the case in *Larsen*. The special referee found and the record supports the conclusion the appraisals were prepared at the request of a business associate of Knauss. Apparently, Knauss and his associate had plans to develop the subdivision. A letter in the record from the appraiser indicates he was instructed to appraise the properties under the assumption improvements would be made. There is no indication the bank gave him this instruction. Additionally, there was no expert testimony establishing the appraisal was negligently performed by the independent appraiser. Further, although Knauss testified he relied upon the appraisals he also testified he probably did not see the appraisals before entering into the loans. There is therefore, some evidence Knauss did not rely on the appraisals. *Fleming v. Federal Land Bank of Columbia*, 167 Ga. App. 326, 306 S. E. (2d) 332 (1983). We specifically note Knauss characterized himself as an experienced investor and "seasoned" loan applicant. He had purchased several pieces of property on Hilton Head prior to this transaction. He indicated on his loan applications he had a net worth of over Two Million Dollars and testified at one time he had been the leading stockbroker in the United States.

We agree with the trial court's conclusion that Knauss failed to prove (1) First Federal supplied the appraisals; (2) he relied upon the appraisals in deciding to purchase the lots; and (3) the appraisals were negligently performed. No representation was made to Knauss that First Federal would not seek deficiency judgments from him. Under these facts Knauss has not demonstrated a defense to the potential deficiency claims.

The decision of the circuit court is affirmed.

GARDNER and GOOLSBY, JJ., concur.