626 S.E.2d 43

**Elwood Porter TOMLINSON and Frances Goins Tomlinson, Respondents,**

v.

**Kenneth B. MIXON, d/b/a Pavillion Custom Homes, and All American Homes of NC, LLC, Defendants,**

**Of Whom All American Homes of NC, LLC is, Appellant.**

No. 4070.

Court of Appeals of South Carolina.

Heard Nov. 7, 2005.

Decided Jan. 9, 2006.

Rehearing Denied Feb. 16, 2006.

468

Robert W. Buffington, of Columbia, for Appellant.

Eric S. Bland, of Columbia and Ronald L. Richter, Jr., of Charleston, for Respondent.

GOOLSBY, J.:

This case involves claims for negligent misrepresentation and breach of contract. The appellant, All American Homes of NC, LLC, a manufacturer of modular houses, contends the trial court erred in not requiring the respondents, Elwood and Frances Tomlinson, to elect their remedy after the jury returned a verdict in their favor on each claim. We reverse and remand.

The Tomlinsons decided to build a home on Lake Wateree and contacted defendant Kenneth B. Mixon, doing business as Pavillion Custom Homes. Mixon held himself out as an All American authorized dealer. An All American business card also identified him as such.

The Tomlinsons later visited the All American factory in North Carolina where they met with David Bridges, a regional sales manager and corporate representative of All American, and reviewed building plans. Before the Tomlinsons left, they asked Bridges whether Mixon was an authorized dealer. Bridges assured them he was. Bridges also told the Tomlinsons All American had checked Mixon out and All American would "stand behind him." The Tomlinsons then contracted to purchase the All American home through Mixon.

After Mixon started construction, All American terminated its relationship with Mixon and never delivered the home to the building site. Calls by the Tomlinsons to All American went unanswered. All the while, the Tomlinsons, in reliance upon the contract, incurred various costs and expenses. They were also threatened with liens against their property.

When the Tomlinsons finally reached Bridges, he told them All American had dismissed Mixon as a builder and it would not build the home that the Tomlinsons had contracted to purchase.

This suit followed with the Tomlinsons alleging, among other things, that they had entered into a contract with All American for the construction of the house in question.

The trial judge advised in her charge to the jury that it was "to consider each [cause of action] as if the others don't exist," that "there is only one recovery for the wrong," and that "at some particular point there will be a mechanism by which to make the appropriate award to the plaintiff[s]." She expressly instructed the jury that it was not to add any damages awarded on multiple claims "in order to provide recovery to the plaintiff[s]."

In a special interrogatory, the jury found Mixon to be All American's agent. The jury returned a verdict in the amount of $46,149.00 on the Tomlinsons' breach of contract claim and $73,416.67 on their negligent misrepresentation claim.[1] The trial judge later denied a motion by All American to require the Tomlinsons to elect the remedy upon which they wanted to recover. She then entered judgment on both claims, allowing the Tomlinsons to recover total damages in the amount of $119,565.67.

We hold the trial judge erred in not requiring the election that All American sought.

In *Save Charleston Foundation v. Murray,*[2] this court said the following about the doctrine of election of remedies:

> The doctrine of election of remedies involves a choice between two or more different and coexisting modes of procedure and relief afforded by law for the same injury. *Tzouvelekas v. Tzouvelekas,* 206 S.C. 90, 33 S.E.2d 73 (1945); *Walker v. McDonald,* 136 S.C. 231, 134 S.E. 222 (1926); *Boardman v. Lovett Enterprises, Inc.,* 283 S.C. 425, 323 S.E.2d 784 (Ct.App.1984). Its purpose is to prevent double redress for a single wrong. 25 Am.Jur.2d *Election of Remedies* Section 1 at 646 (1966). Application of the doctrine should be confined to cases where double compen-

---

1. Although the jury's verdict for the breach of contract claim is $46,149.00 on the verdict form, slightly different amounts are contained in the record and in one of the briefs, but these discrepancies appear to be mere scrivener's errors.

2. 286 S.C. 170, 333 S.E.2d 60 (Ct.App.1985).

sation of the plaintiff is threatened. *Id.* Section 3 at 650. When an identical set of facts entitle the plaintiff to alternative remedies, he may plead and prove his entitlement to either or both; however, the plaintiff may not recover both. *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.,* 279 S.C. 468, 309 S.E.2d 763 (Ct.App.1983). "This rule rests on the principle that the plaintiff should have a full opportunity to prove his claim to some form of relief, but he should not receive a double recovery." *Id.* at 473, 309 S.E.2d at 766.[3]

For the doctrine of election of remedies to apply, therefore, two or more remedies must be available to the complaining party at the time of the election and these remedies must be inconsistent.[4] An inconsistency exists where, if an election is not made, a party will receive a double recovery.[5]

Here, the Tomlinsons recovered damages on claims of breach of contract and negligent misrepresentation. These recoveries rest on the same set of facts, *viz.,* that All American represented its dealer Mixon to be its agent;[6] that the Tomlinsons contracted with All American through its dealer and agent Mixon to manufacture a modular house and have it delivered to and constructed upon the Tomlinsons' property on Lake Wateree; that All American failed to perform when it refused to deliver the house to the building site and complete the construction started by its agent, notwithstanding All American represented it would stand behind him; and that the Tomlinsons suffered damages as a consequence.

---

3. *Id.* at 175–76, 333 S.E.2d at 63–64.

4. 25 Am.Jur.2d *Election of Remedies* § 16, at 776 (1996).

5. *Id.* § 17, at 777–78.

6. During argument on the motion for a directed verdict, counsel for the Tomlinsons appeared to recognize that the question of whether Mixon was All American's agent served as the underpinning of its causes of action for breach of contract and negligent misrepresentation. After counsel pointed to Bridges's statement that All American would "stand behind Mixon and his work," counsel said in reference to that statement: "That's the basis of [the] negligent misrepresentation claim. It's also the basis of the contract claim, because they say we will stand behind his work. We make a promise."

To avoid a double recovery, the Tomlinsons, therefore, should elect on remand which one of the two claims they wish to recover their damages upon.[7]

**REVERSED and REMANDED.**

SHORT, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, J. (dissenting):

I respectfully dissent. I disagree with the reasoning and analysis of the majority. The holding of the majority misconstrues and misapplies the law extant in regard to the doctrine of election of remedies. I **VOTE** to **AFFIRM** the jury verdicts.

The jury rendered verdicts for Elwood Porter Tomlinson and Frances Goins Tomlinson (the Tomlinsons) against All American Homes of NC, LLC (All American) on a breach of contract claim in the amount of $46,146.00 and a negligent misrepresentation claim in the amount of $73,416.67. All American contends the trial court erred as a matter of law in failing to require an election of remedies. I disagree.

### *FACTUAL/PROCEDURAL BACKGROUND*

The Tomlinsons, who reside in Charlotte, North Carolina, planned to build their retirement home on a lot near Lake Wateree, South Carolina. In early 2001, the Tomlinsons contacted Kenneth Mixon, who worked as a manufactured home dealer, about a Cape Cod style home. Mixon told the Tomlinsons about All American Homes, a manufacturer of pre-built, modular homes which are sold to authorized builders/dealers, who in turn sell them to the end customer. The houses are made of wood, in sections, delivered to the sites and placed on foundations. The customer must purchase a home through a dealer.

---

7. *See Brown v. Felkel*, 320 S.C. 292, 465 S.E.2d 93 (Ct.App.1995) (holding the doctrine of election of remedies barred a plaintiff's claim against his accountant for the negligent promotion of his investments in, and loans to, another where the plaintiff earlier recovered from the accountant actual damages sustained as a result of the accountant making these investments and loans in an action premised on breach of contract).

Mixon suggested the Tomlinsons go to the company's factory. A meeting was scheduled. The Tomlinsons met with David Bridges, the regional sales manager for All American. Mixon promised to meet them there, but he did not attend due to car trouble. At the meeting, All American approved proposed changes for the home and gave the Tomlinsons assurances concerning Mixon. All American assured the Tomlinsons that Mixon had been checked out, he was an All American dealer in good standing, and Bridges would "stand behind him." Bridges does not recall any discussions regarding Mixon. However, the Tomlinsons declared that Bridges' assurances concerning Mixon affected their decision to proceed with the transaction.

The Tomlinsons appeared to have entered into a contract with Mixon on or about March 9, 2001, even though the meeting did not occur until later and Mixon had not yet been approved as a dealer for All American. The Tomlinsons issued a check made payable to Pavillion Homes in the amount of $10,000 dated March 9, 2001. The Authorized Builder Application of Mixon is dated April 23, 2001. Bridges believed the meeting occurred after May 18, 2001.

The assurances the Tomlinsons received at the meeting with All American only affected their going forward with building and not the entering into the contract itself. Although unsigned by Mixon, the written agreement lists a pre-tax purchase price of $176,694. The house model listed on the contract between the Tomlinsons and Mixon was not a Cape Cod style house, but rather a "Salt Box RSO." This model was sold by Mixon's former company, Virginia Homes, but not by All American.

The Tomlinsons obtained construction financing and work began on their house. On August 15, 2001, All American agreed to sell the house to Mixon for $109,700.97 and received a $1,000 deposit from Mixon. When construction slowed, the Tomlinsons tried to reach Mixon repeatedly. The Tomlinsons confronted Mixon at his house and were told that someone else would finish the house. All American had not initiated construction on the house because Mixon had not returned the required confirmation package, which consisted of a builder-approved floor plan and order contract.

On September 18, 2001, All American terminated Mixon as an authorized builder/dealer. The Tomlinsons were not informed of Mixon's proposed termination and continued with the building of their house. Mr. Tomlinson stated that if All American Homes had informed him of Mixon's termination when it happened, he would have "immediately" stopped the work that was being done on the site and the damages would have been limited at that point to $12,000. According to Mrs. Tomlinson, "a lot of expense" would have been saved. Prior to learning that Mixon was no longer a dealer with All American, the Tomlinsons withdrew approximately $32,000 on the construction loan. That loan was refinanced, and other costs—storage, marina rental, utilities at the site—also accrued, for damages of approximately $60,000.

In April 2002, the Tomlinsons filed a complaint against Mixon d/b/a Pavillion Custom Homes and All American Homes of North Carolina, LLC, alleging breach of contract, third party beneficiary contract rights, breach of contract accompanied by a fraudulent act, constructive trust, constructive fraud, negligent misrepresentation, and violation of the South Carolina Unfair Trade Practices Act. The Tomlinsons presented damages in excess of $130,000.

Following a default by Mixon, the case was tried against All American before a jury. Only three claims remained at the close of trial: breach of contract, breach of contract accompanied by a fraudulent act, and negligent misrepresentation. In response to a special interrogatory, the jury found Mixon was an agent of All American. The jury returned verdicts in favor of the Tomlinsons on the breach of contract claim, awarding $46,146.00, and the negligent misrepresentation claim, awarding $73,416.67. On June 18, 2003, the trial court ordered post-trial motions and plaintiff's election of remedies to be filed within ten days. The Tomlinsons objected to an election. The trial court ruled no election was required.

## LAW/ANALYSIS

### I. The Doctrine of Election of Remedies

All American contends the trial court erred in denying its post-trial motion requesting an election of remedies. I disagree.

The doctrine of election of remedies involves a choice between two or more different and coexisting modes of procedure and relief afforded by law for the same injury. *Taylor v. Medenica*, 324 S.C. 200, 479 S.E.2d 35 (1996); *Tzouvelekas v. Tzouvelekas*, 206 S.C. 90, 33 S.E.2d 73 (1945); *Cowart v. Poore*, 337 S.C. 359, 523 S.E.2d 182 (Ct.App.1999); *Brown v. Felkel*, 320 S.C. 292, 465 S.E.2d 93 (Ct.App.1995); *Jones v. Winn–Dixie Greenville, Inc.*, 318 S.C. 171, 456 S.E.2d 429 (Ct.App.1995); *Inman v. Imperial Chrysler–Plymouth, Inc.*, 303 S.C. 10, 397 S.E.2d 774 (Ct.App.1990); *see also Williams v. Riedman*, 339 S.C. 251, 529 S.E.2d 28 (Ct.App.2000) (noting that election of remedies involves a choice between different forms of redress afforded by law for the same injury or different forms of proceeding on the same cause of action). Election of remedies is the act of choosing between different remedies allowed by law on the same set of facts. *Taylor*, 324 S.C. at 218, 479 S.E.2d at 44–45; *Harper v. Ethridge*, 290 S.C. 112, 348 S.E.2d 374 (Ct.App.1986).

The basic purpose behind the election of remedies doctrine is the principle that there can be no double recovery for a single wrong. *Brown*, 320 S.C. at 294, 465 S.E.2d at 95; *Harbin v. Owens–Corning Fiberglas*, 316 S.C. 423, 450 S.E.2d 112 (Ct.App.1994); *see also Cowart*, 337 S.C. at 364, 523 S.E.2d at 185 (purpose of doctrine of election of remedies is to prevent double redress for a single wrong). Use of the doctrine is limited to cases in which a double recovery by the plaintiff is threatened. *Adams v. Grant*, 292 S.C. 581, 358 S.E.2d 142 (Ct.App.1986); *Save Charleston Found. v. Murray*, 286 S.C. 170, 333 S.E.2d 60 (Ct.App.1985).

When one set of facts entitles the plaintiff to alternative remedies, he may plead and prove his entitlement to either or both. *Save Charleston Found.*, 286 S.C. at 176, 333 S.E.2d at 64; *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.*, 279 S.C. 468, 309 S.E.2d 763 (Ct.App.1983). However, the plaintiff may not recover both. *Id.*

A defendant may raise the issue of election of remedies at any stage of the case. *Cowart*, 337 S.C. at 364, 523 S.E.2d at 185. Indeed, to carry out the doctrine's purpose, the trial judge should sua sponte require election if he lets both causes of action go to the jury. *Id.; Brown*, 320 S.C. at 294, 465

S.E.2d at 95. To hold otherwise would result in an impermissible double recovery. *Adamson v. Marianne Fabrics, Inc.*, 301 S.C. 204, 391 S.E.2d 249 (1990); *Inman*, 303 S.C. at 15, 397 S.E.2d at 777.

Election of remedies is not applicable where there are two separate causes of action, each based on different facts. *Taylor v. Medenica*, 324 S.C. at 218, 479 S.E.2d at 45; *Jones*, 318 S.C. at 175, 456 S.E.2d at 432; *Robert Harmon and Bore, Inc. v. Jenkins*, 282 S.C. 189, 318 S.E.2d 371 (Ct.App.1984). When applying the doctrine of election of remedies, courts examine the underlying facts in the causes of action and determine if different conduct supports distinct injuries. *See Taylor*, 324 S.C. at 218, 479 S.E.2d at 45; *Creach v. Sara Lee Corp.*, 331 S.C. 461, 502 S.E.2d 923 (Ct.App.1998); *Jones v. Winn–Dixie Greenville, Inc.*, 318 S.C. 171, 456 S.E.2d 429 (Ct.App.1995).

In order to decide if the doctrine of election of remedies is applicable to the facts of the instant case, and because the application of the doctrine depends heavily on the specific facts of a case, I analyze prior precedent concerning election of remedies.

In *Jones v. Winn–Dixie Greenville, Inc.*, 318 S.C. 171, 456 S.E.2d 429 (Ct.App.1995), our court summarized the principles of election of remedies. Jones brought an action against Winn–Dixie alleging slander, outrage, false imprisonment, and assault and battery after she had been forcibly detained at the store as a suspected shoplifter. *Id.* at 174, 456 S.E.2d at 431. The jury returned verdicts in the same amounts on the false imprisonment and assault and battery causes of action. *Id.* The trial court eliminated one of the awards under election of remedies, reasoning that the failure to do so would result in double recovery because Jones had essentially suffered one wrong. *Id.* In reversing that decision, this court explained:

> The doctrine of election of remedies involves a choice between different forms of redress afforded by law for the same injury or different forms of proceeding on the same causes of action. Stated another way, election of remedies is the act of choosing between different remedies allowed by law on the same set of facts. Its purpose is to prevent double redress for a single wrong. Where a party has asserted only one primary wrong, he is entitled to only one

recovery. However, the principle has no application where two separate causes of action, each based on different facts, exist.

*Jones,* 318 S.C. at 175, 456 S.E.2d at 432. The court focused on the distinct elements of the differing causes of action in finding that "distinctive injuries occurred at different times," thus supporting each separate award against Winn–Dixie. *Id.*

Our Supreme Court, in *Taylor v. Medenica,* 324 S.C. 200, 479 S.E.2d 35 (1996), cited *Jones* in concluding the trial court erred in forcing an election of remedies. Taylor brought suit for medical malpractice, complaining about the manner in which Dr. Medenica had handled the treatment of Taylor's breast cancer. As a result of Dr. Medenica's actions, Taylor was ineligible for alternative forms of chemotherapy. At the time of trial, it was uncontested that her condition was terminal. *Id.* at 210, 479 S.E.2d 35, 479 S.E.2d at 40. Taylor sought to recover under negligence and unfair trade practices. *Id.* The jury returned substantial awards on both causes of action. *Id.* at 219, 479 S.E.2d at 45. The court enunciated that an election of remedies was not proper. The court observed that the negligence cause of action was based on the provision of "reckless medical care," while the Unfair Trade Practices Act claim was premised on billing for useless and unnecessary tests. The court recognized that, because different conduct supports the UTPA and negligence claims, no election was required. *Id.*

*Creach v. Sara Lee Corporation,* 331 S.C. 461, 502 S.E.2d 923 (Ct.App.1998), is analogous to the case at hand. *Creach* involved an action for negligence, breach of warranty, and strict liability for injuries suffered when Creach bit into a biscuit that contained a hard substance that injured her tooth. *Id.* at 463, 502 S.E.2d at 924. The jury found for Creach on all three causes of action and returned a verdict of $60,000 against Sara Lee. *Id.* The defense argued the verdict represented triple recovery and moved that the verdict be reformed. The court confirmed no election was required because only one recovery was sought and only one recovery was awarded. *Id.* The court of appeals expressed its imprimatur with the jury charge by the trial court. The trial court instructed the jury: "Creach was not entitled to multiple redress for a single wrong." *Id.* at 464, 502 S.E.2d at 924.

The first inquiry in an election of remedies case is whether the causes of action involved different elements of proof, speak to facts occurring at different points in time, and are not simply two ways of describing a single wrong. *See Taylor,* 324 S.C. at 218, 479 S.E.2d at 45; *Creach,* 331 S.C. at 464, 502 S.E.2d at 924; *Jones,* 318 S.C. at 175, 456 S.E.2d at 432. Here, All American contends the Tomlinsons should elect between the remedies for breach of contract and negligent misrepresentation. One cause of action, based in tort, addresses the circumstances and representations made prior to and after entering into the contract. The other cause of action is in contract and applies to the failure to perform.

## II. Breach of Contract

The first remedy sought concerns breach of contract. A binding, valid contract must exist for there to be a cause of action for breach of contract. *See Tidewater Supply Co. v. Industrial Elec. Co.,* 253 S.C. 483, 171 S.E.2d 607 (1969); *Regions Bank v. Schmauch,* 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003).

In order for a contract to be valid and enforceable, the parties must have a meeting of the minds as to all essential and material terms of the agreement. *Davis v. Greenwood Sch. Dist. 50,* 365 S.C. 629, 620 S.E.2d 65 (2005); *Player v. Chandler,* 299 S.C. 101, 382 S.E.2d 891 (1989); *see also Edens v. Laurel Hill, Inc.,* 271 S.C. 360, 364, 247 S.E.2d 434, 436 (1978) ("It is well settled in South Carolina that in order for there to be a binding contract between parties, there must be a mutual manifestation of assent to the terms."). The "meeting of minds" required to make a contract is not based on secret purpose or intention on the part of one of the parties, stored away in his mind and not brought to the attention of the other party, but must be based on purpose and intention which has been made known or which, from all the circumstances, should be known. *Player,* 299 S.C. at 105, 382 S.E.2d at 894. "A contract exists where there is an agreement between two or more persons upon sufficient consideration either to do or not to do a particular act." *Benya v. Gamble,* 282 S.C. 624, 628, 321 S.E.2d 57, 60 (Ct.App.1984).

A contract is an obligation which arises from actual agreement of the parties manifested by words, oral or written, or by

conduct. *Prescott v. Farmers Tel. Coop., Inc.*, 335 S.C. 330, 516 S.E.2d 923 (1999); *Gaskins v. Blue Cross–Blue Shield of South Carolina*, 271 S.C. 101, 245 S.E.2d 598 (1978); *Regions Bank*, 354 S.C. at 661, 582 S.E.2d at 439. These principles govern contract formation generally and specifically control the creation of a contract. *Hodge v. National Fidelity Ins. Co.*, 221 S.C. 33, 68 S.E.2d 636 (1952).

The necessary elements of a contract are offer, acceptance, and valuable consideration. *Sauner v. Pub. Serv. Auth. of South Carolina*, 354 S.C. 397, 581 S.E.2d 161 (2003); *Armstrong v. Collins*, Op. No. 4028 (S.C. Ct.App. filed Oct. 3, 2005) (Shearouse Adv. Sh. No. 38 at 41); *see also Hughes v. Edwards*, 265 S.C. 529, 220 S.E.2d 231 (1975) (stating for a contract to arise there must be an agreement between two or more parties and an offer, acceptance, and meeting of the minds of the parties involved).

A contract may give a right to demand performance, but no cause of action arises until a party refuses or neglects to perform some duty required by the terms of the contract. *See Tillinghast v. Boston & Port Royal Lumber Co.*, 39 S.C. 484, 18 S.E. 120 (1893), *overruled on other grounds by Hendrix v. Hendrix*, 296 S.C. 200, 371 S.E.2d 528 (1988). Thus, a contract cannot give rise to a cause of action until there has been some breach of such contract. *Id.* A breach of contract is defined as a failure without legal excuse to perform any promise which forms the whole or part of a contract. *See Black's Law Dictionary* 188 (6th ed.1990). A party breaches a contract when he does not perform as he agreed to perform under the contract. A party's contractual duty is found in the obligation assumed by the party to the contract. *Sechrest v. Forest Furniture Co.*, 264 N.C. 216, 141 S.E.2d 292 (1965). A party's failure to comply with the contractual duty constitutes the breach. *Id.* Nonperformance of a valid contract is a breach thereof.

To recover for a breach of contract, the plaintiff must prove:
(1) a binding contract entered into by the parties;
(2) a breach or unjustifiable failure to perform the contract; and
(3) damage suffered by the plaintiff as a direct and proximate result of the breach.

*Fuller v. Eastern Fire & Cas. Ins. Co.*, 240 S.C. 75, 124 S.E.2d 602 (1962). The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a natural consequence and a proximate result of such breach. *Id.* Damages recoverable for breach of contract either must flow as a natural consequence of the breach or must have been reasonably within the parties' contemplation at the time of the contract. *Manning v. City of Columbia*, 297 S.C. 451, 377 S.E.2d 335 (1989); *Kline Iron & Steel Co. v. Superior Trucking Co.*, 261 S.C. 542, 201 S.E.2d 388 (1973).

Damages in a breach of contract action are to place the nonbreaching party in the position he or she would have been had there been no breach and the contract was performed. *See Drews Co. v. Ledwith–Wolfe Assocs., Inc.*, 296 S.C. 207, 371 S.E.2d 532 (1988) (explaining that purpose of award of damages for breach is to give compensation, that is, to put plaintiff in as good a position as he would have been in had the contract been performed); *Minter v. GOCT, Inc.*, 322 S.C. 525, 473 S.E.2d 67 (Ct.App.1996) (stating purpose of damages for breach of contract is to put plaintiff in as good a position as he or she would have been if contract had been performed). Damages give the nonbreaching party the benefit of his bargain. *South Carolina Fed. Sav. Bank v. Thornton–Crosby Dev. Co.*, 303 S.C. 74, 399 S.E.2d 8 (Ct.App.1990), *aff'd*, 310 S.C. 232, 423 S.E.2d 114 (1992). The proper measure of damages for breach of contract is the loss actually suffered by the contractee as the result of the breach. *South Carolina Fin. Corp. v. West Side Fin. Co.*, 236 S.C. 109, 113 S.E.2d 329 (1960). In the normal case, the damage will consist of two distinct elements: (1) out-of-pocket costs actually incurred as a result of the contract; and (2) the gain above costs that would have been realized had the contract been performed. *Collins Entm't, Inc. v. White*, 363 S.C. 546, 611 S.E.2d 262 (Ct.App.2005).

The breach of contract action in the instant case pertains to All American's failure to construct a home at the Tomlinsons' property. As the jury responded to the special interrogatory finding Mixon was an agent of All American, it is reasonable to conclude the jury therefore found All American responsible for breach of the contract entered into between the Tomlinsons and Mixon. The Tomlinsons sought and recovered actual

damages suffered as a result of All American's failure to manufacture, deliver, and/or install the Cape Cod Home on the property as contractually agreed.

## III. Negligent Misrepresentation

The negligent misrepresentation cause of action dealt with the meeting that took place in North Carolina between the Tomlinsons and All American. South Carolina courts have recognized the common law tort of negligent misrepresentation. *See Sauner v. Pub. Serv. Auth. of South Carolina*, 354 S.C. 397, 581 S.E.2d 161 (2003); *Gilliland v. Elmwood Prop.*, 301 S.C. 295, 391 S.E.2d 577 (1990); *Brown v. Stewart*, 348 S.C. 33, 557 S.E.2d 676 (Ct.App.2001); *deBondt v. Carlton Motorcars, Inc.*, 342 S.C. 254, 536 S.E.2d 399 (Ct.App.2000). Thus, one may bring an action sounding in tort for negligent misrepresentation.

"A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction." *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 474, 581 S.E.2d 496, 504 (Ct.App.2003). Recovery of damages in a negligent misrepresentation action is based upon negligent conduct and predicated upon a negligently made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation. *Evans v. Rite Aid Corp.*, 324 S.C. 269, 478 S.E.2d 846 (1996); *Gruber v. Santee Frozen Foods, Inc.*, 309 S.C. 13, 419 S.E.2d 795 (Ct.App.1992); *see also First Fed. Sav. Bank v. Knauss*, 296 S.C. 136, 370 S.E.2d 906 (Ct.App.1988) (recognizing that under appropriate facts, negligent representations inducing property purchase could be actionable); *Pittman v. Galloway*, 281 S.C. 70, 313 S.E.2d 632 (Ct.App.1984) (holding negligent representation inducing the plaintiff's purchase of land is actionable). A claim for negligent misrepresentation may be made when the misrepresented facts induced the plaintiff to enter a contract or business transaction. *Redwend*, 354 S.C. at 474, 581 S.E.2d at 504.

To recover in a negligent misrepresentation action, a plaintiff must prove:

(1) the defendant made a false representation to the plaintiff;

(2) the defendant had a pecuniary interest in making the statement;

(3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff;

(4) the defendant breached that duty by failing to exercise due care;

(5) the plaintiff justifiably relied on the representation; and

(6) the plaintiff suffered a pecuniary loss as a direct and proximate result of his reliance upon the representation.

*Sauner,* 354 S.C. at 407, 581 S.E.2d at 166; *Armstrong v. Collins,* Op. No. 4028 (S.C. Ct.App. filed Oct. 3, 2005) (Shearouse Adv. Sh. No. 38 at 41); *Brown v. Stewart,* 348 S.C. 33, 42, 557 S.E.2d 676, 680–81 (Ct.App.2001); *deBondt v. Carlton Motorcars, Inc.,* 342 S.C. 254, 266–67, 536 S.E.2d 399, 405 (Ct.App.2000); *AMA Mgmt. Corp. v. Strasburger,* 309 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct.App.1992). For purposes of proving negligent misrepresentation, evidence that a statement was made in the course of the defendant's business, profession, or employment is sufficient to prove the defendant's pecuniary interest in making the statement, even if the defendant received no consideration for it. *AMA Mgmt. Corp.,* 309 S.C. at 223, 420 S.E.2d at 874.

The negligent misrepresentation cause of action stems from the meeting in North Carolina where the Tomlinsons were told All American had investigated Mixon and All American would "stand behind" him. The Tomlinsons sought and recovered actual damages suffered as a result of their reliance upon these representations given by All American regarding Mixon's dealership status. The Tomlinsons' reliance on those alleged misrepresentations was manifested in their decision to further deal with Mixon for the construction of their home and in continuing to do business with All American after Mixon failed to perform. After analyzing the different elements of a breach of contract and negligent misrepresentation, and the facts underlying the causes of action in the instant case, it is luculent that the two causes of action involved separate injuries occurring at different times.

## CONCLUSION

The evidentiary record is the quintessential example of damages irrefutably pertaining to different causes of action, i.e., a separate and distinct breach of contract claim and a negligent misrepresentation cause of action. The breach of contract damages eventuated from All American's failure to deliver the home as ordered. The damages emanating from the negligent misrepresentation cause of action arose from the Tomlinsons' continued reliance on All American's relationship with Mixon.

Mr. Tomlinson testified if All American Homes had informed him of Mixon's termination when it happened, the work would have "immediately" stopped on the site and the damages would have been limited at that point to $12,000. According to Mrs. Tomlinson, "a lot of expense" would have been saved. Prior to learning that Mixon was no longer a dealer with All American, the Tomlinsons withdrew approximately $32,000 on the construction loan. That loan was refinanced, and other costs—storage, marina rental, utilities at the site—accrued, for damages of approximately $60,000.

Furthermore, All American knew or should have known the Tomlinsons were obtaining a construction loan and did not advise the Tomlinsons as to Mixon's status at All American. As the preparation of the Tomlinson home site and foundation began, the Tomlinsons continued to incur expenses and were never informed that All American had terminated its relationship with Mixon and had no intention of delivering a home. Mr. Tomlinson averred that after All American terminated Mixon as a dealer and failed to inform the Tomlinsons, Mixon continued to draw on the home loan and work continued on the house. The Tomlinsons suffered damages in addition to the breach of contract damages as a result of this action. The negligent misrepresentation in the instant case stemmed from the Tomlinsons' continued reliance on All American's assurances even after Mixon had been dismissed, and in All American's failure to inform the Tomlinsons of Mixon's revocation as an All American dealer in order for the Tomlinsons to mitigate their damages.

The jury charges substantiated the conclusion that the causes of action involved different elements and created differ-

ent damages. In describing the damages flowing from the breach of contract claim, the trial judge stated:

> Actual damages are intended to compensate that person and put them in as nearly as possible in the position that they would have been in before the breach occurred.
>
> Actual damages would be the actual losses and expenses which have been suffered by the plaintiff because the defendant breached the contract. Damages give the non-breaching party the benefit of his bargain.
>
> In a normal case, that would consist of two distinct elements. One would be the out-of-pocket expenses and costs that have actually incurred as a result of the contract and the other would be the gain above cost that would have been realized had the contract been performed.
>
> These damages must flow as a natural consequence of the breach or must have reasonably been within the contemplation of the minds of the parties at the time that the contract was made.

In identifying the damages resulting from the negligent misrepresentation claim, the judge asseverated:

> Finally, the plaintiff must prove that the plaintiff suffered a monetary loss as a direct and proximate result of the reliance on these statements. What we mean by that is that it must have been reasonably foreseeable that the plaintiff would rely on the statement and that he would be caused harm as a result of relying on that particular statement.
>
> Now, once you have determined whether or not the plaintiff has met those elements of the negligent misrepresentation then you would again consider the actual damages. And again, actual damages are the actual losses and expenses that have been suffered by the plaintiff because of the actions of the defendant.

The judge inculcated the jury to award **ONLY** damages resulting from the specific conduct concerning each cause of action on a separate and distinct basis. As in *Creach v. Sara Lee Corp.*, 331 S.C. 461, 502 S.E.2d 923 (Ct.App.1998), the jury in the instant case was given clear instructions as to the differing theories of recovery. **There were no exceptions to the jury charge.**

The trial court repeatedly instructed the jury that they were to consider each of the questions on the verdict form separately "as if the other claims did not exist." Moreover, the trial court charged the jury that the law did not allow for multiple recoveries for the same wrong. The judge commanded the jury to consider each cause of action separately. All counsel approved the charge and complimented the trial court on the delivery of a comprehensive and comprehensible jury charge.

The jury returned verdicts on the breach of contract claim in the amount of $46,149 and on the negligent misrepresentation cause of action in the amount of $73,416.67. The jury determined different damages and amounts of damages flowing from the separate injuries of breach of contract and negligent misrepresentation, bolstering the ruling that no election of remedies is required. The verdicts of the jury are logically supported. Attempting to determine the allocation of the differing elements of damage would be an egregious and offensive invasion of the province of the jury.

The actual damages ultimately presented and argued to the jury aggregated $131,985.21. The combined verdict was $119,565.67. All of the amounts were liquidated. All American cannot argue that the amount awarded did not exceed the total actual amount presented. The jury found, in considering the actions separately, that certain losses flowed from the negligent misrepresentation, while certain other losses were more properly attributable to the breach of contract. Apodictically, the Tomlinsons did not receive double recovery.

I **VOTE** to **AFFIRM** the jury verdicts. No election is mandated in this case.